STATE of Minnesota, Respondent,

v.

Arthur Thomas HANF, Appellant.

No. A04–1058.

Court of Appeals of Minnesota.

Oct. 19, 2004.

John M. Stuart, State Public Defender, Susan Andrews, Assistant State Public Defender, Minneapolis, MN, for appellant.

Mike Hatch, Attorney General, James B. Early, Assistant Attorney General, St.

Paul, MN, and Raymond F. Schmitz, Olmsted County Attorney, Rochester, MN, for respondent.

Considered and decided by TOUSSAINT, Chief Judge; LANSING, Judge; and SHUMAKER, Judge.

## OPINION

TOUSSAINT, Chief Judge.

This appeal is from a sentence for felony test refusal. Appellant argues that the upward dispositional departure, which was based on judicial findings, violates his Sixth Amendment right to a jury trial under *Blakely v. Washington,* — U.S. ——, 124 S.Ct. 2531, 159 L.Ed.2d 403 (2004). We affirm.

## FACTS

Appellant Arthur Hanf pleaded guilty to felony refusal to submit to chemical testing. Because Hanf had a zero criminal history score, the presumptive sentence for his offense was 36 months with execution stayed. *See* Minn. Sent. Guidelines IV, V. The district court, however, departed dispositionally, concluding that Hanf, due to his numerous failures in chemical-dependency treatment, his three prior driving while intoxicated convictions (DWIs) within ten years, and his posing a threat to public safety, was a "poor candidate" for probation.

Hanf filed this appeal, arguing that his upward dispositional departure was imposed in violation of *Blakely v. Washington.*

## ISSUES

1. Does *Blakely v. Washington* apply to the Minnesota Sentencing Guidelines?

2. Does *Blakely* apply to upward dispositional departures?

## ANALYSIS

### I.

 Hanf argues that the dispositional departure, based on the district court's findings, violates the Supreme Court's holding in *Blakely v. Washington,* — U.S. ——, 124 S.Ct. 2531, 159 L.Ed.2d 403 (2004). In reviewing a constitutional challenge to a statute, this court applies a de novo standard of review. *State v. Wright,* 588 N.W.2d 166, 168 (Minn.App.1998), *review denied* (Minn. Feb. 24, 1999).

In 1978 the Minnesota Legislature created the Minnesota Sentencing Guidelines Commission to promulgate sentencing guidelines for the district courts. Minn. Stat. § 244.09, subd. 5 (1978). The guidelines were to be promulgated on or before January 1, 1980, and were to be "advisory to the district court." *Id.* They were to provide for a presumptive sentence and to allow for upward or downward departures of up to 15 percent from the presumptive sentence. *See id.,* subd. 5(2).

In *Blakely,* the Supreme Court held that the "statutory maximum" is the greatest sentence a judge can impose solely on the basis of the facts reflected in the jury verdict or admitted by the defendant." *Blakely,* 124 S.Ct. at 2537 (emphasis omitted). The defendant, it held, has a Sixth Amendment right to a jury determination of any fact, except the fact of a prior conviction, that increases the sentence above this maximum. *Id.* at 2536, 2543. The Court, therefore, reversed the 90–month "exceptional sentence" that had been imposed under the State of Washington's determinate-sentencing scheme and "remanded for further proceedings not inconsistent with this opinion." *Id.* at 2535, 2543. In a dissenting opinion, Supreme Court Justice Sandra Day O'Connor stated that the *Blakely* majority opinion "casts constitutional doubt" over all

state guidelines systems, including Minnesota's. *Id.* at 2549.

The Minnesota Sentencing Guidelines are similar in operation to the guidelines in Washington that were at issue in *Blakely*. Although the Minnesota guidelines are administrative rather than statutory, they were developed under legislative mandate and are in some sense binding on the district courts. *See* Minn.Stat. § 244.09, subd. 5 (2002) (providing that the guidelines are advisory but the sentencing court "shall follow" the guidelines procedures when pronouncing sentence in a felony case); *see generally State v. Bellanger*, 304 N.W.2d 282, 283 (Minn.1981) (holding that disagreement with the guidelines does not justify departure); *State v. Hopkins*, 486 N.W.2d 809, 812 (Minn.App.1992) (holding guidelines are not subject to manipulation to justify sentence the court has independently determined).

The Washington guidelines, like Minnesota's, rely on a sentencing "grid" in which presumptive sentences are determined using two variables: offense severity and offender's criminal history (called "offender score" in Washington). Wash. Rev. Code Ann. § 9.94A.510 (2003). Thus, both Washington and Minnesota determine the presumptive sentence by relying, in part, on the offender's criminal history, which is not a fact found by the jury. The 49 to 53 month presumptive sentence range that *Blakely* treated as the "maximum sentence" supported by the jury verdict was not based on the jury verdict alone, but required also non-jury fact-finding on the defendant's criminal history. *See Apprendi v. New Jersey*, 530 U.S. 466, 490, 120 S.Ct. 2348, 2362–63, 147 L.Ed.2d 435 (2000) (holding fact of prior conviction may be determined by a judge).

Because Washington's guidelines also rely partly on criminal history, that factor in Minnesota's sentencing guidelines is not a basis for distinguishing *Blakely*.

■ In Minnesota, if the sentencing court finds an aggravating factor, it is not *required* to depart from the presumptive sentence. *See State v. Garcia*, 302 N.W.2d 643, 647 (Minn.1981) (holding that under the guidelines the judge "may" depart if aggravating factors are present); *State v. Oberg*, 627 N.W.2d 721, 724 (Minn.App. 2001) (noting that even if mitigating factors are present, court is not required to depart), *review denied* (Minn. Aug. 22, 2001).

■ If the presence of an aggravating factor does not *mandate* a departure, then the sentencing court's finding that an aggravating factor exists has no binding effect on the sentence. It is not like an element of the offense that, if found, requires conviction. It is true that the court, if it decides to depart, must give reasons for the departure. *State v. Geller*, 665 N.W.2d 514, 517 (Minn.2003). But this requirement of departure reasons does not obligate the court to depart whenever aggravating reasons are present.

The judicial fact-finding involved in durational departures under the guidelines, however, differs from the more subjective impressions on which judges would decide a sentence under an indeterminate-sentencing scheme. In *Blakely*, the majority opinion acknowledged that indeterminate-sentencing schemes "involve judicial fact-finding, in that a judge ... may implicitly rule on those facts he deems important to the exercise of his sentencing discretion." 124 S.Ct. at 2540. But this fact-finding is acceptable because "the facts [found] do not pertain to whether the defendant has a legal *right* to a lesser sentence—and that makes all the difference insofar as judicial impingement upon the traditional role of the jury is concerned." *Id.* (emphasis in original).

Thus, *Blakely* posits a defendant's right to be sentenced to the presumptive guidelines sentence because that is authorized solely by the jury's verdict. In an indeterminate-sentencing scheme, a defendant would have a right only to be sentenced to a term not greater than the statutory maximum, because the jury's verdict would allow the court to sentence anywhere within that broad range. The "right" recognized in *Blakely* to the presumptive sentence duration exists because the jury must determine "the facts essential to lawful imposition of the penalty," *id.,* and the jury has found no facts beyond the elements of the offense, which determine the presumptive sentence.

Washington's guidelines are similar to Minnesota's in that a departure is not mandatory even if the court finds aggravating factors. *See* Wash. Rev.Code Ann. § 9.94A.535 (2003) (providing court "may" impose "exceptional sentence" if aggravating factors found); see *also State v. Mail,* 65 Wash.App. 295, 828 P.2d 70, 72 (1992) (describing departure as an "option" if aggravating factors present). Thus, this aspect of Minnesota's guidelines is also not a ground for distinguishing *Blakely.*

There is federal caselaw declining to apply *Blakely* to the federal guidelines based on *Blakely*'s footnote stating that the federal guidelines "are not before us, and we express no opinion on them," 124 S.Ct. at 2538 n. 9, or on the courts' reluctance to overturn established precedent. *See United States v. Pineiro,* 377 F.3d 464, 465–66, 469 (5th Cir.) (holding that *Blakely* does not *extend to the federal guidelines* ). *United States v. Penaranda,* 375 F.3d 238, 239–40, 245 (2nd Cir.2004) (certifying *Blakely* questions to Supreme Court without holding it applies to federal guidelines). But these cases do not identify any significant distinction between the federal guidelines and the Washington guidelines

at issue in *Blakely,* and they do not suggest any rationale for avoiding *Blakely*'s application to the Minnesota sentencing guidelines. Therefore, although we do not decide that issue, there appears to be no easy way to distinguish *Blakely* based on unique factors in the Minnesota sentencing guidelines, and we must address the narrower issue of the application of *Blakely* to Minnesota dispositional departures.

The Minnesota Sentencing Guidelines specify sentences that are presumptive with respect to both disposition and duration. Minn. Sent. Guidelines cmt. II.C.01. "Departures with respect to disposition and duration ... are logically separate decisions." *Id.,* cmt. II.D.02. The guidelines provide a non-exclusive list of permissible reasons for departure, without specifying whether these reasons will support dispositional or durational departures, or both. *Id.,* II.D.2. But caselaw has developed an essentially separate category of reasons for dispositional departures. *See State v. Trog,* 323 N.W.2d 28, 31 (Minn. 1982) (holding that a defendant's particular amenability to probation or treatment will justify dispositional departure). Those reasons relate to the individual characteristics of the offender, and may not be used to support a *durational* departure, although some offense-related factors may be used to support dispositional departures. *See State v. Chaklos,* 528 N.W.2d 225, 228 (Minn.1995).

Thus, in practice, dispositional departures in Minnesota have not been governed by the mitigating and aggravating factors listed in the guidelines. In fact, the grounds for dispositional departures have strayed so far from those listed factors that dispositional departures came to be based, although only in part and indirectly, on the social and economic factors that the guidelines *prohibit* as grounds for departure. *See State v. King,* 337 N.W.2d 674,

675–76 (Minn.1983) (holding that social and financial factors may "bear indirectly" on whether defendant is particularly amenable to probation). In 1990, the Guidelines Commission added language in the commentary to attempt to control this use of prohibited factors. Minn. Sent. Guidelines Cmt. II.D.101. But it has not opposed the predominant use of offender-characteristics to make dispositional decisions.

In interpreting the Minnesota guidelines, our supreme court never attempted to limit dispositional departures to the largely offense-related departure factors listed in the guidelines. *See Garcia,* 302 N.W.2d at 647 (affirming, dispositional departure because defendant was an "extremely poor candidate" for probation). In the pre-guidelines indeterminate sentencing scheme, parole release decisions had come to be governed by a matrix system in which a risk of failure level was assigned to each inmate. *State ex rel. Taylor v. Schoen,* 273 N.W.2d 612, 614–15 (Minn. 1978). This level was determined based on identified factors disclosed in "back-ground information." *Id.* at 615 n. 9. At the time, sentencing judges were also acquiring back-ground information on defendants in the presentence investigation. Minn.Stat. § 609.115, subd. 1(1978).

The supreme court in Garcia and other early cases determined, in effect, that, because the guidelines departure factors were non-exclusive, sentencing courts could continue to use the same offender characteristics they had used before in determining whether the defendant should go to prison. *See Trog,* 323 N.W.2d at 31 (holding that "[n]umerous factors," including age, prior record, remorse, attitude in court, are relevant to whether defendant is particularly amenable to probation). These decisions have come to be influenced by psychological evaluations, the court's observations of the defendant, recommen-

dations in the presentence investigation, and other broad considerations, rather than the offense-related factors listed in the guidelines. *See, e.g. State v. Sejnoha,* 512 N.W.2d 597, 600–01 (Minn.App.1994) (affirming downward dispositional departure for sex offender evaluated as amenable to treatment and displaying extreme remorse), *review denied* (Minn. Apr. 21, 1994); *State v. Dokken,* 487 N.W.2d 914, 918 (Minn.App.1992) (stating reversal of downward dispositional departure would be a "weighty and grave matter" for intermediate appellate court, in part because of sentencing judge's opportunity to observe the defendant), *review denied* (Minn. Sept. 30, 1992).

The history of dispositional decisions in Minnesota is somewhat obscured by the fact that appellate review of sentences did not exist in Minnesota before the guidelines. But courts had statutory authority to stay sentences. Minn.Stat. § 609.135, subd. 1 (1978); *see State v. Mertz,* 269 Minn. 312, 315 130 N.W.2d 631, 634 (1964) (stating the trial court had "broad probationary powers" allowing it to stay execution of sentence). And in felony cases, presentence investigations were prepared for the sentencing court detailing the defendant's "individual characteristics, circumstances, needs, potentialities, criminal record and social history" as well as the circumstances of the offense and the harm caused by the offense. Minn.Stat. § 609.115, subd. 1 (1978). The Guidelines Commission's own study showed that preguidelines sentencing judges gave "heavy weight" to a defendant's criminal history in determining the appropriate disposition. Dale G. Parent, *Structuring Criminal Sentences: The Evolution of Minnesota Sentencing Guidelines* 80 (Butterworth 1988). But there was no authority limiting the court's consideration of other factors.

The relevance of this history to the *Blakely* issue is plain. Dispositional departures based on individual offender characteristics under the guidelines are like the traditional sentencing judgments made by judges in indeterminate sentencing schemes. The validity of those judicial judgments is conceded in *Blakely:*

> Of course indeterminate schemes involve judicial factfinding, in that a judge (like a parole board) may implicitly rule on those facts he deems important to the exercise of his sentencing discretion. But the facts do not pertain to whether the defendant has a legal *right* to a lesser sentence—and that makes all the difference insofar as judicial impingement upon the traditional role of the jury is concerned.

124 S.Ct. at 2540 (alteration in original).

Appellant would argue that he has a "right" to a stayed sentence because that is the presumptive disposition under the guidelines. But that argument is unconvincing. First, the presumptive disposition is determined in large degree by the defendant's criminal history score. As discussed above, that score is not in any way determined by the jury's verdict, despite the apparent assumption to the contrary in *Blakely.* Second, the "right" referred to in *Blakely* must arise from the jury's verdict, and that verdict historically has never determined sentence dispositions, at least since courts acquired the authority to stay sentences. Third, while the elements of the offense found by the jury help determine what is a "typical" offense warranting the presumptive duration, Minnesota courts have not attempted to define what is a "typical" offender to serve as a baseline for the proper disposition of any type of offense. *See State v. Lindsey,* 654 N.W.2d 718, 726 (Minn.App.2002) (holding assault, although brutal, was not more serious than typical first-degree assault).

In practice, because the dispositional decision is largely predictive, Minnesota defendants must convince the court that under the open-ended *Trog* factors, they can succeed on probation, whether or not that is the presumptive disposition. *See generally State v. Hennessy,* 328 N.W.2d 442, 443 (Minn.1983) (affirming dispositional departure where district court was satisfied "that the risk of placing defendant on probation was significantly outweighed" by indications defendant would succeed on probation). At least, defendants must convince the court they are not *particularly* unamenable to treatment in a probationary setting to avoid an upward dispositional departure. *See Chaklos,* 528 N.W.2d at 228 (stating general rule that particular unamenability may be used to support upward dispositional departure).

 The traditional role of the jury has never extended to determining which offenders go to prison and which do not. Traditionally, courts and parole officials made "their respective sentencing and release decisions upon their own assessments of the offender's amenability to rehabilitation." *Mistretta v. United States,* 488 U.S. 361, 363, 109 S.Ct. 647, 650, 102 L.Ed.2d 714 (1989). The court's power to impose probation, in particular, resulted in an increase in judicial discretion channeled by "careful study of the lives and personalities of convicted offenders," particularly in the form of reports by probation officers. *Williams v. People of State of New York,* 337 U.S. 241, 249, 69 S.Ct. 1079, 1084, 93 L.Ed. 1337 (1949).

The point is not, as the state argues, that these offender characteristics could not be assessed by juries. If the Sixth Amendment required juries to determine "amenability to probation," that function would have to be assigned to them. But because such decisions are, in essence and in Minnesota practice, the equivalent of

indeterminate sentencing, which *Blakely* approves, the Sixth Amendment does not require it.

We note also that dispositional departures were unknown when the Sixth Amendment was ratified. In 1916, the United States Supreme Court held that the federal district court lacked the authority to suspend a criminal sentence indefinitely upon conditions of good behavior. *Ex parte United States*, 242 U.S. 27, 27, 37 S.Ct. 72, 72, 61 L.Ed. 129 (1916). The Court noted that under the common law, temporary reprieves and executive pardons were the only means of escaping the criminal judgment. *Id.* at 43–44, 37 S.Ct. at 74–75. Even as early as 1860, one court expressed the opinion that the court "does not possess the power to suspend sentence indefinitely in any case." *Id.* at 46, 37 S.Ct. at 76 (quoting *People v. Morrisette*, 20 How. Pr. 118 (1860)). Thus, when the Bill of Rights was ratified, the jury's verdict authorized only execution of the prescribed sentence.

This tradition establishes that an offender's amenability or unamenability to probation is not a "fact," within the meaning of *Apprendi*, that increases the offender's penalty. A dispositional departure requiring an offender to go to prison is undoubtedly a greater penalty than probation. *See State v. Carr*, 274 Kan. 442, 53 P.3d 843, 853 (Six, J., dissenting). But an offender's unamenability to probation is a judgment reached after consideration of a series of facts. It is not a "fact necessary to constitute the crime," *Apprendi*, 530 U.S. at 500, 120 S.Ct. at 2368, but rather a strictly offender-related conclusion.

In Minnesota, the district court is required to provide reasons for a dispositional departure as well as a durational departure. *State v. Larkins*, 479 N.W.2d 69, 75 (Minn.App.1991). In Minnesota's indeterminate sentencing scheme before 1980,

there was no formal requirement that the court provide reasons for a particular disposition. The sentencing judge, however, received a presentence investigation (PSI) that detailed many of the same factors that govern guidelines dispositional decisions. *See* Minn.Stat. § 609.115, subd. 1 (1978). The parties were entitled to an opportunity to contest any part of the PSI. Minn. R.Crim. P. 27.03, subd. 1 (1978). Although courts were not *formally* required to state a reason for the disposition, the detailed information provided the court and the contested nature of the sentencing hearing would have compelled it in most cases to explain the reason for the decision.

It could be argued that the requirement of departure reasons sufficiently distinguishes dispositional departures under the guidelines from indeterminate sentencing. But, although *Blakely* refers to the "facts supporting [the] finding" of deliberate cruelty that authorized the greater sentence in that case, 124 S.Ct. at 2537, it did not compare the degree of formality of fact-finding under the Washington Sentencing Guidelines with the fact-finding traditionally involved in indeterminate sentencing schemes that *Blakely* approved. We conclude that the determination of amenability or unamenability to probation is not the determinate, structured fact-finding that *Blakely* holds the jury must perform.

The Supreme Court has made a similar distinction with respect to the offender's criminal history, or recidivism, which it has termed "a traditional, if not the most traditional, basis for a sentencing court's increasing an offender's sentence." *Almendarez–Torres v. United States*, 523 U.S. 224, 243, 118 S.Ct. 1219, 1230, 140 L.Ed.2d 350 (1998). The Court stated that, "to hold that the Constitution requires that recidivism be deemed an 'element' of petitioner's offense would mark an abrupt departure from a longstanding tradition" in

which recidivism went to the punishment only. *Id.* at 244, 118 S.Ct. at 1231. The same could be said with even greater force concerning the offender characteristics that govern dispositional departures, which extend beyond the offender's criminal history score. To hold that the Sixth Amendment requires those personal characteristics to be found by a jury would be an even further departure from tradition than to treat recidivism as an "element." We do not believe that *Blakely* requires this result.

## II.

In a supplemental pro se brief, Hanf raises several issues concerning his sentence and its calculation. He argues that the district court's finding of "unamenable to treatment" could represent a reliance on impermissible social and economic factors. *See* Minn. Sent. Guidelines Cmt. II.D.101 (noting that amenability to probation or treatment could be closely related to social or economic factors and courts should demonstrate departure was not based on those impermissible factors). But the district court at sentencing cited Hanf's six prior failures at treatment and his "extreme threat to public safety," not his employment record or community ties or similar factors. The record demonstrates that the dispositional departure was not based on social or economic factors.

Hanf also argues that because he has no prior felony DWI convictions, the district court was required to stay his sentence. But the guidelines provision on "Mandatory Sentences" merely clarifies that for offenders with Hanf's criminal history, "the sentence should be stayed unless the offender has a prior conviction for a felony DWI, in which case the presumptive disposition is [c]ommitment to the Commissioner of Corrections." Minn. Sent. Guidelines II.E. This provision makes execution of

sentence mandatory for offenders with a prior felony DWI conviction. It does not bar dispositional departures for offenders without a prior felony DWI.

The other arguments in the pro se brief are not supported by argument or citation to legal authority, or are without any merit, and we need not address them. *See State v. Krosch,* 642 N.W.2d 713, 719 (Minn.2002) (holding that issues not supported by argument or citation to legal authority were deemed waived).

## DECISION

The district court's imposition of a dispositional departure based on Hanf's prior driving record and other offender-related characteristics did not violate his Sixth Amendment right to trial by jury.

**Affirmed.**