STATE of Minnesota, petitioner,
Appellant,

v.

Mark Richard CHAKLOS, Respondent.

No. C0–93–2542.

Supreme Court of Minnesota.

Feb. 10, 1995.

Hubert H. Humphrey, III, Atty. Gen., St. Paul, and James Terwedo, Scott County Atty., Thomas J. Harbinson, First Asst. County Atty., Susan K. McNellis, Asst. County Atty., Shakopee, for appellant.

John M. Stuart, State Public Defender, Lawrence Hammerling, Deputy State Public Defender, Minneapolis, and Stephen W. Walburg, Jaspers, Moriarity & Walburg, Shakopee, for respondent.

## OPINION

KEITH, Chief Justice.

This is a sentencing appeal. Defendant, Mark Richard Chaklos, while having a blood alcohol concentration of .10 or more, drove his car into the rear of another car on a state highway, injuring the driver, Monica Dahl, and killing the passenger, Rhonda Lee Holker, a 32–year–old woman who was the mother of a 9–year–old girl. A jury found the defendant guilty of criminal vehicular homicide and criminal vehicular operation resulting in substantial bodily harm. He was sentenced by the trial court to consecutive executed prison terms of 21 months and 12 months, or an aggregate term of 33 months in prison. Believing that the execution of the term of 12 months constituted a dispositional departure, the trial court gave reasons therefor. The court of appeals concluded that the dispositional departure was unjustified and ordered the trial court on remand to resentence defendant to a *stayed* consecutive term for the less serious of the two offenses. *State v. Chaklos*, 522 N.W.2d 361 (Minn.App. 1994). We reverse the decision of the court of appeals and reinstate the sentence imposed by the trial court.

In the early evening of February 16, 1992, the two victims, Dahl and Holker, were proceeding east on Highway 42, a well-traveled road, near Prior Lake in a Geo Metro, which is a small car. Dahl, the driver, pulled off the road at the approach of a westbound ambulance with lights flashing. After the ambulance had driven by her car, Dahl pulled back onto the eastbound lane. She then saw headlights coming up behind her "pretty fast." She accelerated but was unable to accelerate sufficiently to avoid being rear-ended by the car, which was driven by defendant. Defendant's car, a Saab, which he was driving without insurance, smashed into the rear of Dahl's car, pushing it off the road into a utility pole.

Holker died from a broken neck. Dahl was hospitalized. Stitches were needed to repair cuts on her face and arms. A plastic surgeon had to be called to the hospital to repair her ear. Dahl received physical therapy for several weeks after the accident because of an injury to her back. She also apparently has suffered some depression as a result of the accident.

Defendant, age 26, lied to the investigating officer, claiming that another car had passed him and hit the Dahl car and that he had merely hit the other car after the accident. Defendant said that the other car had fled the scene. He also claimed that he had consumed only "two beers." Analysis of a blood sample taken from defendant with his permission, however, revealed that his blood alcohol concentration was .25, which is very high.

An accident reconstruction expert established that it was defendant's car that had hit the Dahl car and that his car had not left any skid or brake marks before making impact.

A complaint was filed against defendant on April 4, 1992, charging him with three counts of criminal vehicular homicide under three different subsections (2, 3 and 4) of section 609.21, subdivision 1, for the killing of Holker, and three counts of criminal vehicular operation resulting in substantial bodily harm under three different subsections (2, 3 and 4) of section 609.21, subdivision 2a for injuring Dahl.

On April 12, 1992, about 2 months after the accident, defendant was arrested in Burnsville for driving while intoxicated. His blood alcohol concentration at that time was .16.

After this arrest he entered a treatment program, which apparently he successfully completed.

The case did not come on for trial until July 1993, a year and a half after the incident. The jury acquitted defendant of the two counts based on subsections (2) of sections 609.21, subdivision 1 and 609.21, subdivision 2a. These were counts requiring proof of negligent driving while under the influence of alcohol. The jury found him guilty of the other counts, counts requiring proof that his driving caused the death or injury while he had a blood alcohol concentration of .10 or more or while he had a blood alcohol concentration of .10 or more within 2 hours after the accident. The jury also found him guilty of two lesser-included offenses submitted, namely, two counts of driving while under the influence of alcohol.

As we said at the outset, the trial court imposed consecutive executed prison terms of 21 months and 12 months, or an aggregate term of 33 months in prison. The court of appeals ruled that the trial court erred in executing the sentence for the less serious of the two offenses.

We agree that the presumptive sentence for the offense of criminal vehicular homicide, section 609.21, subdivision 1(3), is an executed prison term of 21 months.[1]

■ We also agree that the trial court was free to use consecutive sentencing without having to give any reasons. Minnesota Sentencing Guidelines II.F.2. allows "permissive" use of consecutive sentencing "[w]hen the offender is convicted of multiple current felony convictions for crimes against different persons, and when the sentence for the most severe current conviction is executed according to the guidelines."

■ The trial court assumed and the state conceded that the presumptive sentence to be used in the consecutive sentence of defendant for the less serious offense of criminal vehicular operation resulting in substantial bodily harm is a *stayed* sentence of 12 months. The argument can be made that when consecutive sentencing is authorized by II.F.2., all that is required is that the most serious offense be one that is, according to the guidelines, required to be executed and not stayed. *Cf. State v. Lindsey,* 314 N.W.2d 823, 825 (Minn.1982) (the phrase "executed according to the guidelines" means "when the sentence for the most severe current conviction is, according to the guidelines, required to be executed, and not stayed"). Not only does II.F.2. say that consecutive sentencing is permitted if the sentence for the most serious current offense is required to be executed, but II.F. later provides:

> For persons given consecutive sentences, the sentence *durations* for each separate offense sentenced consecutively shall be aggregated into a single presumptive sentence. The presumptive *duration* for offenses sentenced consecutively is determined by locating the Sentencing Guidelines Grid cell defined by the most severe offense and the offender's criminal history score and by adding to the *duration* shown therein the *duration* indicated for every other offense sentenced consecutively at their respective levels of severity but at the zero criminal history column on the Grid.

(emphasis added). The combination of these two provisions in II.F. suggests that the drafters of the Minnesota Sentencing Guidelines contemplated that if the most severe current conviction is executed according to

---

1. Two types of criminal vehicular homicide (section 609.21, subdivision 1(1) and (2)) are severity level VII offenses carrying a presumptive executed sentence of 48 (44–52) months in prison for one with a criminal history score of zero. The type of criminal vehicular homicide defendant was convicted of, however, is a type that is classified as a severity level VI offense. The normal presumptive sentence for a severity level VI offense by one with a criminal history score of zero is 21 months *stayed.* However, Minnesota Sentencing Guidelines II.C. expressly provides, "[w]hen the current conviction offense is criminal vehicular operation resulting in death (Minn. Stat. § 609.21, subds. 1 & 3), the presumptive disposition is Commitment to the Commissioner of Corrections. The presumptive duration of sentence is the fixed duration indicated in the appropriate cell of the Sentencing Guidelines Grid."

the guidelines, then the durations for all of the offenses being sentenced consecutively should be combined into a single duration. *Accord State v. Hopkins,* 486 N.W.2d 809, 813 (Minn.App.1992) (relying on this argument in concluding that the state erred in conceding that execution of consecutive sentences was a departure); *State v. Beamon,* 438 N.W.2d 397, 399–400 (Minn.App.1989) (relying on this argument), *pet. for rev. denied* (Minn., May 12, 1989).

Assuming, however—*without deciding*—that the execution of the sentence of 12 months for the less serious offense constitutes a dispositional departure, the question is whether the departure is justified. As a general rule, the *offender*-related factor of particular unamenability to treatment in a probationary setting may be used to justify a dispositional departure in the form of execution of a presumptively-stayed sentence but may not be used to support an upward durational departure. On the other hand, *offense*-related aggravating factors may be used to support not only such a dispositional departure but, alternatively, an upward durational departure. *State v. Back,* 341 N.W.2d 273, 275 (Minn.1983); *State v. Heywood,* 338 N.W.2d 243 (Minn.1983); *State v. Trog,* 323 N.W.2d 28, 31 (Minn.1982).

The trial court foreclosed reliance on particular unamenability to probation by stating at the time of sentencing that defendant had demonstrated in the treatment program a sincere desire to change his behavior.

The court of appeals concluded that the offense-related factors cited by the trial court were insufficient to justify a dispositional departure. *Chaklos,* 522 N.W.2d at 363. It said that the injury to the victim of the offense was an element of the offense of criminal vehicular operation resulting in substantial bodily injury and could not be considered. *Id.* It said that while defendant's high blood alcohol concentration could be considered in determining whether to depart, it was not, by itself, enough to justify a departure. *Id.*

As we said in *Williams v. State,* "[i]f the reasons given [for a departure] are improper or inadequate, but there is sufficient evidence in the record to justify departure, the departure will be affirmed." 361 N.W.2d 840, 844 (Minn.1985).

Examining the record, we conclude that there are reasons which objectively justify a departure in this case.

This is not an "ordinary" case of criminal vehicular operation resulting in substantial bodily harm. First, defendant had a very high blood alcohol concentration. Second, defendant was driving without insurance, a factor that we have said may be considered (along with the fact that the defendant was highly intoxicated) in deciding whether to depart. *State v. Rasinski,* 472 N.W.2d 645, 649–51 (Minn.1991); *State v. McGee,* 347 N.W.2d 802, 806 (Minn.1984). Third, we have said, in a case involving a different offense, that the sentencing court may take into consideration the offense-related conduct of trying to pin the blame for the offense on someone else, something defendant did here. *State v. Elkins,* 346 N.W.2d 116, 119 (Minn. 1984).

The combination of these factors makes defendant's conduct significantly more serious than that typically involved in the commission of the offense in question. Therefore, the departure, if it was a departure, was justified.[2]

---

**2.** Even assuming that there is insufficient evidence in the record to objectively justify the dispositional departure (if it was a departure) from the presumptive sentence for criminal vehicular operation resulting in substantial bodily harm, the appropriate remedy in this case for the court of appeals was not simply to modify the sentence or to direct the trial court to do so. This is because adequate departure factors independently exist objectively justifying a departure from the presumptive sentence duration for the more serious offense of criminal vehicular homicide. As we have said in a number of cases, in such a situation a remand for resentencing in connection with the more serious offense is appropriate. See *State v. Coe,* 411 N.W.2d 180, 181–82 (Minn.1987), and cases cited therein. Those cases make it clear that (a) if the trial court wants to impose a total sentence of, say, 90 months and accomplishes this by imposing two consecutive 45–month sentences, and (b) if it turns out that consecutive sentencing in this situation is not permitted, then (c) the correct remedy is to remand to give the trial court an opportunity to impose a longer sentence for the first offense *if* aggravating circumstances justifying a

In summary, we reverse the decision of the court of appeals and reinstate the aggregate sentence imposed by the trial court.

Reversed and sentence reinstated.

doubling of the presumptive sentence for that offense are present.

Here a remand for resentencing on the more serious offense would have allowed the trial court to impose a sentence of up to 33 months, the aggregate sentence the trial court clearly wanted to impose, for the offense of criminal vehicular homicide. This less-than-double durational departure would be justified if aggravating circumstances justifying an upward durational departure are present. We believe that they are present because, in addition to the very high blood alcohol concentration, the driving without insurance, and the blame-shifting, there is the additional offense-related aggravating factor applicable to the more serious offense, and that is the fact that the conduct of defendant indirectly but significantly affected the victim's daughter by depriving her of a mother. See *State v. Myers*, 416 N.W.2d 736, 738 (Minn.1987) and *State v. Broten*, 343 N.W.2d 38, 41 (Minn.1984), which provides support for this conclusion.