650 N.W.2d 738 (2002)
STATE of Minnesota, Respondent,
v.
George Cornelius WATKINS, Appellant.
No. C6-01-1877.
Court of Appeals of Minnesota.
September 24, 2002.
*739 Mike Hatch, Attorney General, St. Paul, MN; and Amy Klobuchar, Hennepin County Attorney, Michael K. Walz, Assistant County Attorney, Minneapolis, MN, for respondent.
John M. Stuart, State Public Defender, Lawrence W. Pry, Assistant Public Defender, Minneapolis, MN, for appellant.
Considered and decided by KLAPHAKE, Presiding Judge, HALBROOKS, Judge, and PARKER, Judge.[*]

O P I N I O N
HALBROOKS, Judge.
Appellant George C. Watkins challenges his (1) conviction of aggravated robbery on the ground that the evidence was insufficient to support the conviction because he testified that he did not know that he was not entitled to take the vehicle, and (2) sentence for fleeing police on the ground that the court erred by departing from the presumptive sentence without justifying the departure with findings of substantial and compelling circumstances. Because the evidence in the record is sufficient to support the aggravated-robbery conviction and because the trial court acted within its discretion in sentencing, we affirm.

FACTS
On March 18, 2001, David Chaokhio left his apartment in his Honda Accord with the intent to buy marijuana. When Chaokhio saw appellant George C. Watkins and two other young males walking by, he gestured to them, indicating his desire to buy some marijuana. Appellant motioned to Chaokhio to pull into a nearby gas station that was closed at the time. Appellant's companions continued walking down the street as appellant met Chaokhio.
Chaokhio testified that appellant got into his front passenger seat and asked him how much he wanted to buy. Chaokhio told appellant that he wanted ten dollars' worth and asked appellant if he could change a twenty-dollar bill. At that point, appellant pulled a gun out of his front pants pocket and pointed it at Chaokhio. Chaokhio stated that he offered to give appellant his money and car and showed him a picture of his daughter with the hope that appellant would not harm him. Appellant then put the gun back in his pocket and asked Chaokhio to drive him to where his friends were. Chaokhio testified that he refused, because he believed that appellant and his friends might then "dispose" of him. Instead, Chaokhio jumped out of his car and ran; appellant drove off.
Chaokhio encountered a Minneapolis City employee, who called 911. On the tape, Chaokhio can be heard in the background, providing information about his car and stating that he had just been held up at gunpoint. The city employee testified that Chaokhio was excited and distraught during their encounter.
Appellant's testimony of the encounter differs significantly. According to appellant, he had purchased some poor-quality ecstasy from Chaokhio a few weeks earlier, and Chaokhio was trying to make up for the bad deal. Appellant stated that he and Chaokhio simply talked about their prior deal in Chaokhio's car, and Chaokhio pulled out a gun when appellant asked if he could get a ride to where his friends were. Appellant claimed that he took the *740 gun away from Chaokhio, and Chaokhio began to "freak out," despite appellant's assurances that he would not harm him. Chaokhio then jumped out of the car and ran off. Appellant, believing that Chaokhio had given him the car to make up for the prior bad-drug deal, drove off in the Honda.
After Minneapolis Police Officers Taylor and Hutchins received a report of a stolen vehicle, they saw acar matching the description with three young men in it. The officers followed the vehicle for a short distance and then activated their emergency lights to pull it over. In response, appellant accelerated and drove through stop signs at three intersections. As appellant was running a fourth stop sign, he hit another vehicle, resulting in serious and permanent injuries to its driver. Appellant's speed was later estimated by an accident reconstructionist to be approximately 59-63 miles per hour when he struck the other vehicle.
In the course of searching appellant incident to his arrest, police found a gun in his pocket that had the serial number scratched off. Chaokhio, brought to the scene, identified his Honda and identified the gun as the one that appellant had pointed at him.
The police interviewed Chaokhio that night. His account in the interview was consistent with his trial testimony, with one exceptionhe told police that his reason for stopping at the gas station was to check a noise coming from his car. When appellant was interviewed by the police, appellant stated that he could not remember any details from the encounter with Chaokhio and that he knew nothing about the gun.
Appellant was charged with aggravated robbery under Minn.Stat. §§ 609.11, subd. 5, .245, subd. 1 (2000); theft of a motor vehicle under Minn.Stat. § 609.52, subds. 2(17), 3(3)(d)(v) (2000); fleeing a peace officer in a motor vehicle resulting in substantial bodily harm under Minn.Stat. § 609.487, subd. 4(c) (2000); and possession of a firearm with the serial number removed under Minn.Stat. § 609.667(2) (2000). Appellant waived his right to a jury trial, and the court found him guilty on all counts. The court sentenced appellant to consecutive, executed sentences of 48 months for the aggravated robbery and one year and one day for fleeing a peace officer. The court also imposed a concurrent, stayed sentence of one year and one day for the firearm conviction but then executed the sentence at appellant's request. Appellant was not adjudicated on the theft conviction because it was a lesser-included offense to the aggravated robbery. Appellant now challenges his aggravated-robbery conviction and his sentence for fleeing a peace officer.

ISSUES
1. Is the evidence sufficient to support the conviction for aggravated robbery?
2. Was the execution of the sentence for fleeing a police officer a dispositional departure requiring reasons for departure?

ANALYSIS

1. Aggravated-Robbery Conviction.
Appellant contends that the evidence does not support his aggravated-robbery conviction because he testified that he believed that Chaokhio had given him the car to make up for their past bad-drug deal. When reviewing a claim of insufficiency of evidence, we determine whether the evidence, viewed in the light most favorable to the verdict, sufficiently supports the verdict. State v. Webb, 440 N.W.2d 426, 430 (Minn.1989). We will not *741 disturb the verdict if the fact-finder, acting in accordance with the presumption of innocence and the necessity of overcoming it by proof beyond a reasonable doubt, could have reasonably found as it did. State v. Alton, 432 N.W.2d 754, 756 (Minn.1988). We defer to the fact-finder on determinations of credibility. Dale v. State, 535 N.W.2d 619, 623 (Minn.1995).
Minn.Stat. § 609.245, subd. 1 (2000), states:
Whoever, while committing a robbery, is armed with a dangerous weapon or any article used or fashioned in a manner to lead the victim to reasonably believe it to be a dangerous weapon, or inflicts bodily harm upon another, is guilty of aggravated robbery * * *.
"Robbery," in turn, is defined as:
Whoever, having knowledge of not being entitled thereto, takes personal property from the person or in the presence of another and uses or threatens the imminent use of force against any person to overcome the person's resistance or powers of resistance to, or to compel acquiescence in, the taking or carrying away of the property is guilty of robbery * * *.
Minn.Stat. § 609.24 (2000).
Chaokhio testified that appellant pointed a gun at him and that he fled out of fear for his personal safety. Chaokhio's account of the incident was corroborated by the testimony of the city employee who called 911 to report a stolen vehicle on Chaokhio's behalf and who described Chaokhio as being upset and agitated. While Chaokhio's initial statement to the police omitted any reference to his intent to buy marijuana, he did acknowledge that intent before trial and then testified consistently. Appellant, on the other hand, denied any recall of the incident or the gun until he testified at trial. Only then did appellant advance his theory that Chaokhio had given him the vehicle to compensate him for the prior drug deal and that the gun belonged to Chaokhio.
The trial court heard conflicting testimony, assessed the witnesses' credibility, and chose to believe Chaokhio's version of the events. Because we leave credibility determinations to the fact-finder and there is clearly sufficient evidence to support the court's findings, we affirm the aggravated-robbery conviction.

2. Sentencing Issue.
Appellant argues that the trial court abused its discretion in executing the consecutive year-and-a-day sentence for fleeing a police officer in a motor vehicle. Appellant contends that the presumptive disposition for this offense was a stayed sentence and that the court departed upward without citing any aggravating factors to support the departure.
We review sentencing departures under an abuse-of-discretion standard. Rairdon v. State, 557 N.W.2d 318, 326 (Minn.1996). But the underlying issue appellant raises is how to calculate the presumptive disposition for a sentence made consecutive to another sentence. This involves the interpretation of the sentencing guidelines, and, therefore, presents a question of law subject to de novo review. See State v. Roloff, 562 N.W.2d 29, 30 (Minn. App.1997) (treating interpretation of sentencing guidelines provision on custody status point as a legal issue).
The trial court sentenced appellant to an executed sentence of 48 months for the aggravated robbery of Chaokhio. The court also imposed and executed a consecutive sentence of a year and a day for fleeing a peace officer in a motor vehicle. The one-year-and-one-day duration of this sentence was the presumptive duration for the offense, given a criminal-history score *742 of zero, as required when an offense is sentenced consecutively. Minn. Sent. Guidelines II.F. Appellant argues that the presumptive disposition for this offense was a stayed sentence. We disagree.
The guidelines provide that consecutive sentencing is permissive, and requires no departure, when an offender is being sentenced, as appellant was, for a current offense of fleeing a peace officer in a motor vehicle. Minn. Sent. Guidelines II.F.6. Because this offense was being sentenced consecutively to appellant's aggravated-robbery offense, the presumptive duration was calculated using a zero criminal-history score. Minn. Sent. Guidelines II.F. But as this court has noted in the past, a zero criminal-history score is not used to calculate the presumptive disposition of the sentence that is to run consecutively. State v. Hopkins, 486 N.W.2d 809, 813 (Minn.App.1992); State v. Beamon, 438 N.W.2d 397, 400 (Minn.App.1989), review denied (Minn. May 12, 1989).
Appellant argues that, as may be implied in Hopkins and Beamon, his actual criminal-history score determines whether the presumptive disposition for the fleeing charge is an executed or a stayed sentence. But language that has been added to the sentencing guidelines since Hopkins and Beamon clearly states otherwise. The new language allows the court to stay the sentence that is to run consecutively to another, but provides: "If the judge pronounces a consecutive stayed sentence in these circumstances, the stayed sentence is a mitigated dispositional departure, * * *." Minn. Sent. Guidelines II.F. (emphasis added). This language clarifies what was previously in doubt by providing that the presumptive disposition for a permissive consecutive sentence is always an executed sentence.
The supreme court had earlier indicated a similar reading of the guidelines when, in dictum, it stated that if consecutive sentencing is authorized, and the durations of all the sentences made consecutive are aggregated into a single duration, the presumptive dispositions all become executed sentences. State v. Chaklos, 528 N.W.2d 225, 227-228 (Minn.1995). The new language in section II.F. quoted above, which was added in 1996, a year after Chaklos, merely incorporated the court's reading of the proper presumptive disposition for consecutive sentences.
Appellant points out that the supreme court in Chaklos, while implying it was no departure to execute the consecutive sentence, actually decided that the departure, assuming there was one, was supported by aggravating factors. Id. at 228. But it is irrelevant that the court's comments in Chaklos may have been dicta, because they were later incorporated into the guidelines.
This interpretation is further supported by the provision for aggregating the presumptive durations of sentences that are made to run consecutively. See Minn. Sent. Guidelines II.F. As the supreme court noted in Chaklos, and this court also noted in Beamon and Hopkins, the aggregation provision suggests that the sentences subject to it are being executed. See Chaklos, 528 N.W.2d at 227; Hopkins, 486 N.W.2d at 813 (noting that procedure for aggregating presumptive sentences supported conclusion the presumptive disposition was not stayed sentence); Beamon, 438 N.W.2d at 400 (noting that aggregated sentence "reflects the presumptive executed sentence" defendant would have received). This court in Hopkins expressly stated, "Such an aggregation [of presumptive durations] procedure makes the most sense only if all sentence durations are presumptively executed dispositions." 486 N.W.2d at 813.
Appellant argues in his reply brief that this reading of section II.F. would have a *743 harsh effect when sentences for current offenses are made consecutive to prior unexpired sentences. But the guidelines explicitly provide that sentencing consecutive to a prior unexpired sentence is permissive only when "the presumptive disposition for the current offense(s)" is an executed sentence. Minn. Sent. Guidelines II.F. Thus, there would be no situations in which offenders were subjected to consecutive prison time merely because they had an unexpired prior sentence. The presumptive disposition for the new offense(s) would have to be an executed sentence already in order for consecutive sentencing to be permissive.
The purpose of consecutive sentencing is "to confine the offender for a longer period" than with concurrent sentencing. Minn. Sent. Guidelines cmt. II.F.01. That purpose would not be served if the sentence made to run consecutively had to be stayed because that was the presumptive disposition and there were no grounds for departure. We also note that the consecutive sentence begins to run at the end of "any incarceration arising from the first sentence." Minn. Sent. Guidelines cmt. II.F.02. Thus, the consecutive sentence, if stayed, would generally run concurrently with the period of supervised release imposed on the first sentence. The offender would be subject to little, if any, additional sanction from the consecutive sentence if that sentence were required to be stayed rather than executed.

D E C I S I O N
The victim's testimony, as corroborated by other evidence, is sufficient to support the conviction. The trial court did not depart from the presumptive disposition in executing appellant's sentence for fleeing a police officer, and, therefore, no departure reasons were required.
Affirmed.
NOTES
[*] Retired judge of the Minnesota Court of Appeals, serving by appointment pursuant to Minn. Const. art. VI, § 10.