*This opinion will be unpublished and may not be cited except as provided by Minn. Stat. § 480A.08, subd. 3 (2012).*

**STATE OF MINNESOTA
IN COURT OF APPEALS
A13-1712**

State of Minnesota,
Respondent,

vs.

David Edward Palmer,
Appellant.

**Filed August 11, 2014
Affirmed
Larkin, Judge**

Ramsey County District Court
File No. 62-CR-12-2081

Cathryn Middlebrook, Chief Appellate Public Defender, Jennifer Workman Jesness, Assistant Public Defender, St. Paul, Minnesota (for appellant)

Lori Swanson, Attorney General, St. Paul, Minnesota;

John J. Choi, Ramsey County Attorney, Peter R. Marker, Assistant County Attorney, St. Paul, Minnesota (for respondent)

Considered and decided by Cleary, Chief Judge; Larkin, Judge; and Klaphake, Judge.[*]

_____

[*] Retired judge of the Minnesota Court of Appeals, serving by appointment pursuant to Minn. Const. art. VI, § 10.

UNPUBLISHED OPINION

**LARKIN**, Judge

Appellant was convicted of domestic assault and several violations of an order for protection (OFP). He challenges his convictions in this appeal, arguing that the district court erred by failing to obtain a valid waiver when he stipulated to the existence of his prior convictions for enhancement purposes and by giving an unapproved no-adverse-inference jury instruction. He also argues that the evidence was insufficient to sustain his convictions of two of the OFP violations. Lastly, he raises several additional claims in a pro se supplemental brief. We affirm.

## DECISION

### *Stipulation to Prior Convictions*

At his jury trial, appellant David Edward Palmer stipulated that he has prior qualified domestic-violence-related convictions that enhanced the current charges to felony-level offenses, and he waived his right to have this element of the offenses proved at trial. Palmer provided a written stipulation at trial, acknowledging that he was convicted of two counts of second-degree assault and terroristic threats on December 8, 2008, and that the state used these convictions to enhance the pending charges to felony-level offenses. He "knowingly and voluntarily waive[d] [his] right to have this element of the charged offenses established at trial of this matter."

Palmer also provided an oral waiver regarding the stipulation. Palmer's attorney advised him that his "trial rights attach to this element," meaning that he was presumed innocent and had the right to have the state prove this element beyond a reasonable doubt.

Palmer questioned whether the state would have to prove that he was guilty of the prior crimes, and his attorney clarified that the state would have to prove that Palmer had the convictions. Palmer agreed to stipulate to the existence of his prior convictions.

Later, when Palmer's attorney expressed concern that the stipulation was vague, the state offered a noncertified copy of the register of actions for the file number associated with the charges, as well as certified copies of the complaint and a probation-violation report on that file. Palmer asked: "[I]t wouldn't be hard for [the state] to prove that I'm convicted of these crimes, right? All they have to do is print it out?" The district court responded that the state could prove the convictions by admitting certified copies of the convictions into evidence. Palmer once again agreed to stipulate to the existence of the prior convictions, acknowledging that he benefitted from the stipulation because the jury would not hear the details of the prior convictions and that the state could not raise his criminal history unless he testified.

On appeal, Palmer argues that "[b]ecause the [district] court did not obtain a waiver from [him regarding] the . . . substantial rights that he was waiving by stipulating to the element, the stipulation was not valid." Because Palmer did not object to the waiver or stipulation in district court, we apply the plain-error standard of review. *See State v. Kuhlmann*, 806 N.W.2d 844, 851-52 (Minn. 2011) (holding that a district court's failure to obtain the defendant's personal waiver of the right to a jury trial on the stipulated, previous-conviction elements of the charged offenses was not structural error and concluding that the error should be reviewed for plain error because the defendant did not object to the error at trial).

Under plain-error analysis, an appellate court must determine whether there was error, that was plain, and that affected the defendant's substantial rights. *State v. Griller*, 583 N.W.2d 736, 740 (Minn. 1998). If each of these prongs is met, an appellate court will address the error only if it seriously affects the fairness and integrity of the judicial proceedings. *Id.* An error affects substantial rights if the error was prejudicial and affected the outcome of the case. *Id.* at 741. For the reasons that follow, we conclude that the plain-error standard is not met because the alleged error did not affect Palmer's substantial rights.

First, Palmer does not dispute the existence of the prior convictions, and he acknowledged that it would not be difficult for the state to prove the convictions. *See Kuhlmann*, 806 N.W.2d at 853 (concluding that substantial rights were not affected because the defendant never challenged the existence of his previous convictions, the defendant personally admitted on the record that he had the convictions, and the state "could have readily proven the conviction-based elements of the charged offenses"). Second, Palmer was present when the stipulation was read into the record and he was questioned regarding his understanding of the stipulation. *See id.* (noting that the defendant did not challenge the validity or admissibility of his stipulations). Third, Palmer acknowledged that he benefited from the stipulation because the jury would not hear the details of the prior convictions unless he testified. *See id.* (noting that the defendant benefited from the stipulation because it prevented evidence of his criminal history from being presented to the jury).

In sum, even if the district court did not obtain a proper waiver, the error did not affect Palmer's substantial rights, and it therefore does not provide a basis to reverse under the plain-error standard.

### *No-Adverse-Inference Jury Instruction*

Palmer did not testify, and the district court instructed the jury that it should not draw any inference from this fact. Even though Palmer stipulated to the jury instructions, he now argues that the district court's no-adverse-inference jury instruction constitutes reversible error. An unobjected-to, erroneous jury instruction is subject to plain-error analysis. *State v. Baird*, 654 N.W.2d 105, 113 (Minn. 2002). Under the plain-error analysis, Palmer must establish (1) an error; (2) that is plain; and (3) that affects his substantial rights. *Griller*, 583 N.W.2d at 740. An error is plain if it "contravenes case law, a rule, or a standard of conduct." *State v. Ramey*, 721 N.W.2d 294, 302 (Minn. 2006).

"[A]t the defendant's own request and not otherwise, [he shall] be allowed to testify; but failure to testify shall not create any presumption against the defendant, nor shall it be alluded to by the prosecuting attorney or by the court." Minn. Stat. § 611.11 (2010). Therefore, a district court ordinarily should not give a no-adverse-inference jury instruction unless the defense requests it and consents to it. *McCollum v. State*, 640 N.W.2d 610, 616 (Minn. 2002).

Palmer planned to testify. The district court asked Palmer if he clearly understood his right to remain silent, stating:

5

It's a constitutional right. You also understand that if you opted not to testify in this case, that you could ask me to give a special instruction to the jury with the rest of the jury instructions and that instruction would read as follows: The State must convince you by evidence beyond a reasonable doubt that the defendant is guilty of the crime charged. The defendant has no obligation to prove innocence. The defendant has the right not to testify. This right is guaranteed by the federal and state constitutions. You should not draw any inference from the fact that the defendant has not testified in this case.

You understand Mr. Palmer, that if you decided not to testify, you could ask me to give this instruction?

After contemplating his options, Palmer chose to not testify. The district court included the no-adverse-inference instruction in its final instructions to the jury. The district court plainly erred by giving the instruction without Palmer's consent. *See id.*

But Palmer fails to establish the third requirement of the plain-error analysis because he cannot show that the jury instruction had a significant effect on the jury's verdict. *See Griller*, 583 N.W.2d at 741 (stating that an error affects substantial rights if it "was prejudicial and affected the outcome of the case"); *see also State v. Gomez*, 721 N.W.2d 871, 880 (Minn. 2006) (stating that substantial rights are affected if "there is a reasonable likelihood that giving the instruction in question had a significant effect on the jury verdict"). Palmer "bears a heavy burden of showing that [his] substantial rights have been affected"; "absent a showing of prejudice, [the instruction] is harmless." *Id.*

Palmer argues that the instruction made it appear that he was unwilling to give his side of the story and communicated to the jury that he was guilty. But the victim, S.S., provided testimony that favored Palmer at trial. S.S. testified that on March 10, 2012, she went to Palmer's apartment to pick up their son. S.S. "got in a predicament" with another

6

woman who was at Palmer's apartment before the woman left. S.S. denied telling officers that Palmer assaulted her. She claimed that the officers assumed that Palmer assaulted her.

But the majority of the evidence did not support the victim's exonerating testimony. Palmer's neighbor, K.K., testified that on March 10, 2012, around 4:30 a.m., she called 911 to report someone knocking loudly on a neighboring apartment door, a girl screaming for help, a man yelling, and the sound of "somebody being thrown around." K.K. heard only one male voice and one female voice and did not hear anyone leave the apartment. The responding officers testified that when S.S. answered the door, she appeared to have been crying and had red marks on her face and neck. S.S. reported to the officers that Palmer returned home drunk, was upset because he did not want her to leave, and slapped her face. S.S. and Palmer verbally argued, and Palmer grabbed her throat and pinned her against the wall. S.S. reported that Palmer has an eight-year history of domestic abuse against her. Officers testified that neither S.S. nor Palmer reported that anyone else had been in the apartment that night. And S.S. acknowledged that she did not tell the officers about the purported other woman. After considering this evidence, the jury found Palmer guilty of assaulting S.S.

The original July 12, 2011 OFP prohibited Palmer from committing acts of domestic abuse against S.S. and from having any contact with S.S., including "by or through other persons." The OFP was amended on September 15, 2011, to allow "peaceable contact for the purposes of communication about visitation" with the parties' children. All other provisions of the OFP remained in "full force and effect." There was

7

strong trial evidence that Palmer and S.S.'s communication on March 10, 2012, was far from peaceful. It was loud enough to be heard by a neighbor (K.K.) and to prompt the neighbor to call 911. When the police arrived, S.S. was visibly upset and reported that Palmer had physically assaulted her. Because the jury heard a version of the events that favored Palmer, but that version was inconsistent with the majority of the evidence, we conclude that Palmer's substantial rights were not affected by the no-adverse-inference jury instruction.

### Sufficiency of the Evidence

Two of Palmer's OFP-violation convictions stem from telephone calls that Palmer made while he was in custody on March 10 and 11, 2012. During those calls, Palmer asked his mother to contact S.S. and S.S.'s mother. Palmer argues that the evidence is insufficient to sustain convictions based on the alleged third-party contact. He contends that the evidence merely shows that he attempted to contact S.S. and that an attempt is insufficient to support a conviction of violation of an OFP. More specifically, he argues that the evidence does not show that his mother made contact with S.S.

In considering a claim of insufficient evidence, this court's review is limited to an analysis of the record to determine whether the evidence, viewed in a light most favorable to the conviction, is sufficient to allow the jury to reach the verdict that it did. *State v. Hurd*, 763 N.W.2d 17, 26 (Minn. 2009). This court will not disturb the verdict if the jury, acting with due regard for the presumption of innocence and the requirement of proof beyond a reasonable doubt, could have reasonably concluded that the defendant was guilty of the charged offense. *Bernhardt v. State*, 684 N.W.2d 465, 476-77 (Minn.

8

2004). This court defers to the jury's credibility determinations, *State v. Watkins*, 650 N.W.2d 738, 741 (Minn. App. 2002), and assumes that "the jury believed the state's witnesses and disbelieved any evidence to the contrary." *State v. Moore*, 438 N.W.2d 101, 108 (Minn. 1989).

Transcriptions of Palmer's in-custody phone calls were admitted into evidence. The following telephone conversation occurred on March 10, 2012:

| [Palmer]: | So I don't know, man. Hopefully . . . that girl can f---in' come to court and get this s--t dropped and I can f---in' just be out in the morning. Do you hear me? |
|---|---|
| [Mother]: | Yeah, [S.S.]? |
| [Palmer]: | Who else, man? |
| [Mother]: | Yeah. |
| . . . . | |
| [Palmer]: | I don't know, man. I just need people here at court on Monday to get this s--t dropped. |
| [Mother]: | Well the only person you need there is her. Nothing I can do. |
| [Palmer]: | Well I can't call her from here . . . |
| [Mother]: | I'll keep tryin' but her phone is off and you know it. |
| . . . . | |
| [Palmer]: | I don't know, man. I just hope she ends up showing up so, I don't know. Call her mom and tell her I'm in here. |
| [Mother]: | Yeah. |
| [Palmer]: | Tell her what's goin' on and |
| [Mother]: | What's [S.S.'s mother's] number . . . ? |
| [Palmer]: | Five . . . eight. |
| [Mother]: | Wait. Wait. Fi . . . five . . . seven |
| [Palmer]: | Three . . . eight. |
| [Mother]: | What's the first three? |
| [Palmer]: | Six one two. |
| . . . . | |
| [Palmer]: | Hopefully that dumb girl will be here and get this s--t all dropped and I can just go home. So |

> I don't know. Do some callin' around see what you can do and I'll call you back later.

The following telephone conversation occurred on March 11, 2012:

> [Mother]: I haven't talked to [S.S.]. Her mom called, dad talked to her and she said she'd tell her to call and I haven't heard from her.
>
> . . . .
>
> [Mother]: Dad said that I guess she did call and dad talked to her.
>
> [Palmer]: Yeah, I know, I tried to ask him what she said and he wouldn't f---in' act like he's stupid or something.
>
> . . . .
>
> [Father]: I just told you what I told her!
>
> [Mother]: Well, that's all, that she called, dad said [Palmer] said to be down at court on Monday morning. She said okay. Did she?
>
> [Father]: She said where and when, I said I don't know.
>
> [Mother]: She said where and when and he said I don't know.
>
> . . . .
>
> [Palmer]: Could you call [S.S.'s mother] and tell her I'm in Ramsey County?
>
> [Mother]: What?
>
> [Palmer]: Call [S.S.'s mother] and tell her I'm in Ramsey County, man[.]
>
> [Mother]: I left her a message saying that.
>
> [Palmer]: Okay, mom. . . . Can you call [S.S.'s mother], all right.

Viewing the evidence in the light most favorable to the verdict, the telephone calls establish that Palmer's parents contacted S.S. on Palmer's behalf, just as Palmer had requested. Moreover, after the jail calls were made, S.S. wrote a letter to Palmer's mother that exonerated Palmer and opined that Palmer should not be prosecuted. That letter suggests that Palmer's parents contacted S.S. and enlisted her cooperation on Palmer's behalf, just as Palmer had requested. Although Palmer's mother testified that

10

she did not contact anyone on Palmer's behalf, her credibility was challenged during cross-examination, particularly regarding the jail-call recording in which she wrote down the phone number for S.S.'s mother and indicated that she was going to call, just as Palmer had requested. Assuming that the jury believed the state's witnesses and disbelieved evidence to the contrary, the evidence supports Palmer's convictions of violating the OFP through third-party contact.

### Pro Se Claims

Palmer raises several additional claims in his pro se supplemental brief including (1) ineffective assistance of counsel, (2) an unfair trial due to the district court's bias and the prosecutor's misconduct, (3) errors in evidentiary rulings, (4) cumulative trial errors, (5) impermissible multiple sentences, (6) violation of his substantial rights after his probable-cause hold expired, and (7) a speedy trial violation.

These claims are arguably waived for lack of briefing. *See State v. Wembley*, 712 N.W.2d 783, 795 (Minn. App. 2006) (stating that assignment of error based on mere assertion and not supported by argument or authority is waived unless prejudicial error is obvious on mere inspection), *aff'd*, 728 N.W.2d 243 (Minn. 2007). But we have nonetheless thoroughly reviewed Palmer's claims and conclude that none presents a basis for relief. *See Ture v. State*, 681 N.W.2d 9, 20 (Minn. 2004) (rejecting pro se arguments without detailing consideration of each argument).

**Affirmed.**