*This opinion will be unpublished and
may not be cited except as provided by
Minn. Stat. § 480A.08, subd. 3 (2014).*

**STATE OF MINNESOTA
IN COURT OF APPEALS
A14-1372**

State of Minnesota,
Appellant,

vs.

Bradley James Schnickel,
Respondent.

**Filed May 11, 2015
Reversed and remanded
Rodenberg, Judge**

Anoka County District Court
File Nos. 02-CR-13-948, 02-CR-13-2653, 02-CR-13-3560

Lori Swanson, Attorney General, St. Paul, Minnesota; and

Anthony C. Palumbo, Anoka County Attorney, Robert D. Goodell, Assistant County Attorney, Anoka, Minnesota (for appellant)

Frederic K. Bruno, Samantha Foertsch, Bruno Law, Minneapolis, Minnesota (for respondent)

        Considered and decided by Rodenberg, Presiding Judge; Ross, Judge; and

Klaphake, Judge.[*]

---

[*] Retired judge of the Minnesota Court of Appeals, serving by appointment pursuant to Minn. Const. art. VI, § 10.

UNPUBLISHED OPINION

**RODENBERG**, Judge

Appellant State of Minnesota challenges respondent Bradley James Schnickel's sentence, a downward durational departure from the Minnesota Sentencing Guidelines, arguing that the departure was based on impermissible offender-related factors. We reverse and remand.

## FACTS

Starting in 2010 and continuing until 2013, respondent Bradley James Schnickel used an alias to communicate with minor girls online. Respondent, a police officer in his early thirties at the time of the offenses, represented himself online as a male bartender, between 19 and 23 years old, who was sexually interested in younger girls. A police investigation resulted in the seizure of some 9,000 pages of electronic evidence of online conversations between respondent and hundreds of girls between 12 and 16 years old who informed him that they were in junior high or high school.

Respondent was charged in Anoka County by three separate complaints with 20 criminal counts including criminal sexual conduct, attempted criminal sexual conduct, engaging in electronic communication involving sexual conduct with minors, and furnishing alcohol to a minor. As part of a plea agreement, respondent pleaded guilty to five criminal felony counts and the remaining 15 counts were dismissed. At his plea

hearing, respondent testified to a factual basis supporting the five counts to which he was pleading guilty, each count relating to a different victim.[1]

Respondent pleaded guilty to attempted third-degree criminal sexual conduct concerning Child L.[2] Respondent met Child L in 2010 when she was in-line skating in Anoka County. Respondent stopped his car and engaged her in conversation. Respondent told Child L that she was attractive to him, and they began communicating over the internet through social media sites. Respondent and Child L met in person several times when she was 15. They eventually had sexual intercourse when she was 16. Respondent sent Child L pictures of his genitals, described sexual things he wanted to do to her, and asked her to perform sexual acts on him. Respondent agreed that this was "grooming or beginning a process of trying to have sexual contact" with Child L.

Respondent pleaded guilty to third-degree criminal sexual conduct concerning Child A. Respondent began communicating with Child A online, telling her "who [he] thought [they] knew in common." Respondent told Child A that she was "hot" and pursued a sexual relationship with her. Eventually, respondent and Child A met in person. Respondent instructed Child A to sneak out of her house. He picked her up in his car, provided her with alcohol, and drove her to a park in Anoka County. After Child A consumed the alcohol, respondent began kissing "and having sexual contact" with her. Respondent and Child A then had sexual intercourse in the front seat of respondent's car.

_____

[1] Appellant was also charged in Hennepin County for similar conduct and was sentenced for those crimes prior to his sentencing in Anoka County.
[2] The child-victim designations are carried forward on appeal as they were designated in the district court.

3

Respondent also later asked Child A if she would have sex with him again when she was not intoxicated. Child A was 14 years old.

Respondent pleaded guilty to attempted second-degree criminal sexual conduct concerning Child B. Respondent began communicating with Child B online. Respondent admitted using a "grooming technique" on Child B by telling her how attractive she was and by stating that he could not believe that she did not have a boyfriend. Respondent told Child B that having an older boyfriend had benefits. He told her that he was "particularly attracted to girls about her age" and that he found the size of her buttocks and breasts especially attractive. Respondent told Child B that he wanted to have sexual intercourse with her, that he wanted her to touch him and give him oral sex, and that he wanted to sexually touch her. Respondent agreed that he was in a position of authority over Child B during this time "based on [his] age" and his status as a police officer. Respondent communicated with Child B for "many, many months," and he repeatedly tried to meet Child B. Respondent and Child B met once in October of 2012. Child B snuck out of her apartment complex and met respondent in his car. Once in the car, respondent exposed his erect penis, took Child B's hand and placed it on his penis. Child B was 13 years old.

Respondent pleaded guilty to engaging in electronic communication relating or describing sexual conduct with a child concerning Child C. Respondent began communicating with Child C by connecting with her through mutual "friends" online. Respondent told Child C that she was "hot," that his last girlfriends were about her age, and that he was particularly attracted to girls her age. Respondent expressed his sexual

4

attraction to Child C and electronically sent her pictures of his genitals. He asked her to send him nude pictures of her.[3] Respondent also discussed his desire to perform sexual acts with Child C in online chats, including sexual intercourse and oral sex. Child C was 13 years old when respondent first began communicating with her.

Respondent pleaded guilty to engaging in electronic communication relating to or describing sexual conduct with a child concerning Child D. Respondent began communicating with Child D online through mutual Facebook contacts. Respondent told Child D that he liked girls her age, and he communicated the sexual acts he wanted to do with Child D, including sexual intercourse. Child D was 14 years old.

The plea agreement allowed respondent to seek a dispositional and/or durational departure with the understanding that the state would seek commitment to prison for a maximum of 142 months. The state also agreed not to seek consecutive sentences. Respondent sought both dispositional and durational departures from the district court. At the sentencing hearing, respondent called three witnesses, and both he and his wife read statements to the district court. The state called no witnesses, but asked the pre-sentence investigation report (PSI) author to clarify her recommendations and read victim impact statements from one victim and from another victim's parents.

The district court denied respondent's motion for a dispositional departure but granted his motion for a durational departure, sentencing respondent to 30 months' imprisonment to run concurrently for each count, plus a lifetime conditional-release

---

[3] Respondent had particular difficulty remembering specific statements he made to Child C, admitting "I don't remember specifics. Like [the prosecutor] said, there were a lot of them."

5

term.[4] The district court stated that the sentences requested by the state and respondent were "in stark contrast to each other, and neither satisfies my sense of what is fair and what is just." In denying respondent's motion for a dispositional departure, the district court explained that a dispositional departure "would be insufficient because it would minimize the seriousness of these offenses." The district court rejected the state's 142-month sentence request as "insufficient because [it] does not take into account the work that this defendant has done to try to control these destructive urges and behaviors."

The district court explained its reasoning for departing durationally by stating: "I've given you a durational departure from the Sentencing Guidelines because I do believe that you have demonstrated some amenability to treatment, and so for that reason I'm willing not to send you to prison for a hundred forty-two months." In the later-filed departure report, the district court identified "amenable to probation," "amenable to treatment: sex offender" and "shows remorse/accepts responsibility" as its reasons for departure. These factors are all listed under the departure form's heading "Related to Individual Offender." There are no other factors indicated on the form as being the basis of the district court's durational departure.

This appeal by the state followed.

## DECISION

We review a district court's decision to depart from the sentencing guidelines for an abuse of discretion. *State v. Givens*, 544 N.W.2d 774, 776 (Minn. 1996). This

[4] This sentence constitutes a durational departure for four of the five counts. The parties agree that the count concerning Child L, attempted third-degree criminal sexual conduct with a criminal history score of two, has a presumptive sentence of 30 months.

6

reviewing standard, "while deferential, is not a limitless grant of power to the trial court." *State v. Soto*, 855 N.W.2d 303, 312 (Minn. 2014) (quotation omitted). A district court abuses its discretion when basing its decision on "an erroneous view of the law." *Riley v. State*, 792 N.W.2d 831, 833 (Minn. 2011).

The district court may depart from the sentencing guidelines only if there are substantial and compelling reasons to support departure. Minn. Sent. Guidelines 2.D (2013). Substantial and compelling reasons are those that make a case atypical. *Taylor v. State*, 670 N.W.2d 584, 587 (Minn. 2003). We may affirm a departure even if the reasons given are "improper or inadequate" when departure is sufficiently supported by evidence in the record. *Williams v. State*, 361 N.W.2d 840, 844 (Minn. 1985); *see also State v. Carter*, 424 N.W.2d 821, 823 (Minn. App. 1988) (stating that we can examine the record to determine whether the evidence supports departure even when the reasons provided do not justify departure).

The primary issue in this appeal is whether the district court's durational departure is supported by proper factors. Offender-related factors may justify a dispositional departure, but may not be used to support a durational departure. *State v. Chaklos*, 528 N.W.2d 225, 228 (Minn. 1995). Offense-related factors may support a durational departure. *Id.* In considering a motion for a durational departure, a district court must examine "whether the defendant's conduct was significantly more or less serious than that typically involved in the commission of the crime in question." *State v. Cox*, 343 N.W.2d 641, 643 (Minn. 1984).

Here, the district court found that respondent "demonstrated some amenability to treatment" and identified this reason as supporting a durational departure. In its departure report, the district court found that respondent's amenability to probation and remorse/acceptance of responsibility also supported the durational departure.

A defendant's amenability to treatment and amenability to probation are offender-related factors that the district court "must not focus on" to support a durational departure. *State v. Behl*, 573 N.W.2d 711, 713 (Minn. App. 1998) *review denied* (Minn. Mar. 19, 1998); *see also Chaklos*, 528 N.W.2d at 228, *State v. Peter*, 825 N.W.2d 126, 130 (Minn. App. 2012) ("Caselaw is settled that offender-related factors do not support durational departures."). Because the law is clear that offender-related factors cannot support a durational departure, the district court erred in sentencing respondent to a downward durational departure on these grounds.

The district court also determined that respondent "shows remorse/accepts responsibility" and that this supported respondent's downward durational departure. "As a general rule, a defendant's remorse bears only on a decision whether or not to depart dispositionally, not on a decision to depart durationally." *State v. Back*, 341 N.W.2d 273, 275 (Minn. 1983).

Respondent argues that remorse/acceptance of responsibility can be appropriately considered an offense-related factor, citing *State v. Bauerly*, 520 N.W.2d 760, 762 (Minn. App. 1994), *review denied* (Minn. Oct. 27, 1994). In *Bauerly*, we quoted *State v. McGee*, 347 N.W.2d 802, 806 n.1 (Minn. 1984), stating that "lack of remorse could relate back and be considered as evidence bearing on a determination of the cruelty or seriousness of

8

the conduct on which the conviction is based," 520 N.W.2d at 762. Bauerly was convicted of a property offense, and the district court considered her remorse, among other factors, in granting her motion for a downward dispositional departure. *Id.* at 761-62. We concluded that remorse was "properly considered" by the district court in "relating back to the seriousness *of her offense*, and *helping* to support the downward durational departure." *Id.* at 763 (emphasis added).

*Bauerly* does not stand for the proposition that a defendant's remorse or acceptance of responsibility, standing alone, supports a durational departure. The durational departure in *Bauerly* was supported by another offense-related factor and her remorse was specifically considered in the context of her offense. *Id.* Assuming, without deciding, that the record supported the district court's finding that respondent demonstrated remorse and accepted responsibility, there is no authority for the proposition that remorse or acceptance of responsibility, standing alone, can justify a downward durational departure.[5]

Respondent proffers several other factors as supporting a downward durational departure. He argues that his "mental impairment" at the time of the offenses supports a downward durational departure. *See* Minn. Sent. Guidelines, 2.D.3.a(3) (2013) ("The offender, because of physical or mental impairment, lacked substantial capacity for

---

[5] *Bauerly* indicates that remorse/acceptance of responsibility may be relevant as it relates "back to the seriousness of [the] offense." 520 N.W.2d at 763. There is evidence in the record both supporting and negating respondent's remorse and acceptance of responsibility. For example, the PSI indicates that respondent "admitted he was driven [to commit the crimes] by his own needs and desires and gave no thought to the victims" when the offenses were committed and that "his main focus appears to be on what he has lost due to his offending behavior."

9

judgment when the offense was committed"). First, the district court did not find a mental impairment and respondent cites no case law to support his argument that his "compulsive" behavior was a mental impairment as defined by the guidelines. *See Ganguli v. University of Minnesota,* 512 N.W.2d 918, 919 n.1 (Minn. App. 1994) (stating that this court declines to address allegations unsupported by legal analysis or citation). Second, respondent relies in part on the PSI, which includes information from respondent's counselor. The PSI states that respondent "suffers from significant insecurity, stemming from his childhood, which led him to believe minor females were safer to approach." These, among other factors, "coupled with [respondent's] self-centeredness [and] attitude of self-entitlement," were "important factors in his offending cycle." Respondent fails to identify any record evidence connecting his predatory behavior to a lack of capacity or a diagnosed mental impairment. The district court did not find this argument convincing, nor do we.

Respondent also argues that the absence of force, weapons, or physical injuries to the victims is a mitigating factor. Respondent did not present this argument to the district court and we therefore do not consider it. *Roby v. State*, 547 N.W.2d 354, 357 (Minn. 1996) ("This court generally will not decide issues which were not raised before the district court").

Lastly, respondent argues that downward durational departures are not atypical because a 2012 report from the Minnesota Sentencing Guidelines Commission identifies 19% of individuals sentenced for criminal sexual conduct offenses in 2012 as having received downward durational departures. Assuming, without deciding, that the report

10

provides accurate information that downward durational departures were granted in 19% of cases during 2012, that information is irrelevant to the legal issues on appeal. The report only identifies the frequency of actual durational departures. It says nothing about offense-related factors specific to respondent's offenses. *See Soto*, 855 N.W.2d at 308 (stating that sentences outside of the presumptive range must "distinguish a case and overcome the presumption in favor of the guidelines sentence"). As discussed above, the district court found no substantial and compelling offense-related factors here.

Because we conclude that the district court improperly relied exclusively on offender-related factors to support its downward durational departure, and respondent's alternative arguments are unpersuasive, we reverse and remand for resentencing.

**Reversed and remanded.**

11