**STATE of Minnesota, Appellant,**

v.

**Richard Paul TROG, Respondent.**

**No. 82–506.**

Supreme Court of Minnesota.

Aug. 17, 1982.

---

Warren Spannaus, Atty. Gen., St. Paul, Robert F. Carolan, County Atty., and Charles Diener, Asst. County Atty., Hastings, for appellant.

Jack Nordby, Minneapolis, for respondent.

AMDAHL, Chief Justice.

The sole issue on this sentencing appeal by the state pursuant to Minn.Stat. § 244.-11 (1980) is whether the district court erred in staying execution of sentence in a case in which the Sentencing Guidelines recommend execution of sentence. We hold that the district court did not err and we therefore affirm.

Defendant was charged with several offenses but reached an agreement with the prosecutor which permitted him to plead guilty to one offense, burglary with assault, Minn.Stat. § 609.58, subd. 2(1)(b) (1980), in exchange for the prosecutor's agreeing to dismiss the other charges. The trial court accepted his plea and ordered a presentence investigation.

The presentence investigation report was favorable and showed, as the prosecutor admitted at the time of sentencing, that, with the exception of this incident, defendant apparently has been an "outstanding citizen." He had no prior involvement with the police, even as a juvenile, had done well in school, and had an excellent work record. The report also showed that defendant, who had been intoxicated at the time of the incident, had cooperated with police and had been shaken by the incident and was extremely contrite.

The burglary offense is a severity level VII offense. Defendant's criminal history score was zero. The presumptive sentence established by the Sentencing Guidelines for this offense by one with defendant's criminal history score is 24 months in prison, with sentence executed.[1]

1. Effective August 1, 1981, burglary with assault, which originally was classified as a severity level VI offense, was reclassified as a severity level VII offense. Whereas the pre-

At the sentencing hearing defendant's attorney, pointing to defendant's prior record of law-abiding behavior, his remorse, his cooperation and his respectful attitude, the strong support shown him by family and friends, and the fact that a stayed sentence would keep defendant under continuing supervision over a longer period, made a strong plea for probation. In support of this plea, counsel for defendant asked a number of people who appeared on defendant's behalf to make brief statements.

One of these, a retired South St. Paul police officer, who had been in charge of the juvenile division and had been defendant's neighbor and had watched him grow up, stated:

> Well, Your Honor, if I may address you in court. In my experiences as a law enforcement officer, I am a great believer in rehabilitation and in all the years that I have been in the law enforcement, I believe this is a very special case where rehabilitation is warranted.
>
> I have known Rick Trog all of his life. In fact he was born in South Saint Paul after his parents moved there. I observed Mr. Trog as he was growing up, as a child, and as a young adult and a teenager.
>
> He was never a rowdy boy, never malicious destruction, and in talking to other people in our community his name never came up as being involved or even suspected of involvement of any type of offense against the community.
>
> I wouldn't be here if I didn't feel that way. I live approximately 140 miles away from this area right now from South St. Paul, since I retired and I took it upon myself to come down here to speak in Mr. Trog's behalf.
>
> As was stated here a moment ago, I rose from the rank of a patrolman to detective sergeant and from 1967 until 1975, when I retired I was in charge of the juvenile division in South Saint Paul. So, I have many contacts with young people who become involved with the law or the city ordinances and those sorts of things.
>
> So, I can't see where anything would be served by depriving Mr. Trog of his freedom. I think that probation; this is my opinion of course, I think probation is very strong in my opinion in this particular case.
>
> He is employed steady. He is ambitious young man. He is a young person going to school and works when he could, and I think it would be a shame that anything else besides probation be given.

Defendant's father stated:

> Well, Your Honor, Rick has never been any problem or any trouble. He has gone fishing, hunting, everything with me ever since he was born—at least since five years old. He has conducted himself in a good manner; never hardly even seen him get in any arguments, much less a fight.
>
> I think by what he has gone through in the last seven months is more than jail or anything would ever do. I could talk a lot more; that tells just about everything. Thank you.

The prosecutor opposed probation, stating that although defendant had been an "outstanding citizen" in the past, there was no basis for departure and the court had no choice in the matter.

The district court then sentenced defendant to the presumptive duration of 24 months in prison but, departing from the presumptive disposition, stayed execution of sentence and placed defendant on probation for 5 years, with the first 6 months to be served in jail under the Huber Law and with the probation agent having authority to order defendant to submit to appropriate treatment if needed. Judge Breunig gave as reasons for the probationary sentence defendant's youth, the fact that defendant had never been involved in a crime before, and his feeling that defendant could be rehabilitated without being confined in prison.

sumptive sentence for the offense would have been 21 months stayed before the reclassification, the presumptive sentence following the reclassification was 24 months with the sentence executed.

This appeal followed.

■ As the state points out in its brief, a defendant's clean record does not by itself justify mitigation of sentence because that factor, in the form of defendant's criminal history score, has already been taken into account by the Sentencing Guidelines in establishing the presumptive sentence. *State v. Cizl*, 304 N.W.2d 632, 634 (Minn. 1981).

■ However, just as a defendant's particular unamenability to probation will justify departure in the form of an execution of a presumptively stayed sentence, a defendant's particular amenability to individualized treatment in a probationary setting will justify departure in the form of a stay of execution of a presumptively executed sentence. *State v. Wright*, 310 N.W.2d 461 (Minn.1981). In *Wright*, the defendant, a first-time offender, was convicted of arson, a severity level VII offense. As in this case, the presumptive sentence was an executed term of 24 months in prison. However, the district court, accepting the recommendations of a psychiatrist and the agent who prepared the presentence investigation report, stayed execution of sentence and placed the defendant on probation, the first year to be served in the workhouse, with defendant being released after 6 months (less time for good behavior) to a suitable treatment program. In affirming, we stated:

> The listed factors justifying mitigation or aggravation focus primarily on the degree of the defendant's culpability. The justification given by the trial court focused more on defendant as an individual and whether the presumptive sentence would be best for him and for society. In *State v. Garcia*, 302 N.W.2d 643 (Minn. 1981), the first decision of this court interpreting the Sentencing Guidelines, we upheld an upward departure (longer sentence and refusal to stay execution) based on strong evidence that the defendant in that case had treated the victim in a particularly cruel way and that the defendant was particularly unamenable to probation. To the same effect on unamenability, *see State v. Park*, 305 N.W.2d

775 (Minn.1981). This is the other side of unamenability to probation—that is, defendant is particularly unamenable to incarceration and particularly amenable to individualized treatment in a probationary setting.

> There is a danger that such a justification could be loosely applied, just as there is a danger that the justification used in *Garcia* and *Park* could be loosely applied. However, the trial court in this instance did not loosely apply the standard. Defendant may well present a danger to the public safety if he is not supervised; but the trial court, relying on the opinion of the psychiatrist and the agent who prepared the presentence investigation report, basically concluded that there was a strong reason for believing that defendant would be victimized in prison and that both defendant and society would be better off if defendant were sent to the workhouse for a short time, then given treatment, and then supervised on probation for the remainder of the 20 years. Underlying the trial court's decision is the belief that the chance that defendant will mend his ways and that society's interests will be safeguarded are better if the probationary treatment approach is followed. We cannot say that the trial court abused its discretion in reaching this conclusion.

310 N.W.2d at 462–63.

■ Numerous factors, including the defendant's age, his prior record, his remorse, his cooperation, his attitude while in court, and the support of friends and/or family, are relevant to a determination whether a defendant is particularly suitable to individualized treatment in a probationary setting. All these factors were present in this case and justify the dispositional departure.

The only issue in this case is whether the dispositional departure was justified. Believing that it was justified, we affirm.

Affirmed.