**STATE of Minnesota, Respondent,**

**v.**

**John KISCH, Appellant.**

**No. C3-83-881.**

Supreme Court of Minnesota.

March 30, 1984.

1. The subject of release of bank records is now covered by Minn.Stat. Ch. 13A (1983 Supp.).

C. Paul Jones, State Public Defender, Robert D. Goodell, Asst. State Public Defender, Minneapolis, for appellant.

Hubert H. Humphrey, III, Atty. Gen., Tom Foley, Ramsey County Atty., St. Paul, for respondent.

## OPINION

AMDAHL, Chief Justice.

This is a sentencing appeal in which the defendant contends that an upward durational departure was unjustified. We affirm.

Defendant, who was 17 at the time of the offense, was certified for prosecution as an adult after his indictment by a grand jury on three counts of murder in the beating death of a 12-year-old runaway boy. Specifically, defendant was charged with first-degree premeditated murder, second-degree intentional murder, and second-degree felony murder. Defendant was permitted to plead guilty to an amended charge that he aided and abetted others, and was aided and abetted by others, in wrongfully and unlawfully but without intent causing the death of the victim during the commission of assault with a dangerous weapon. The presumptive sentence for second-degree felony murder (a severity level X offense) by a person with defendant's criminal history score at the time of sentencing (zero) was an executed term of 116 (111–121) months in prison.[1] The trial court departed durationally, imposing a sentence of 150 months and based the departure on two factors, the particular vulnerability of the victim and the particularly brutal nature of the killing.

The victim's body was found on September 22, 1982, near an automobile parts business in St. Paul. An autopsy revealed that the victim died from severe head injuries resulting from at least four blows to the head, two of which were fatal blows. There were drag marks on the body and there was also evidence of an attempt to burn the body after the victim had died. The murder weapon, a 2½-foot long two-by-four board, was found nearby.

1. The Sentencing Guidelines Commission, effective November 1, 1983, has reclassified felony murder as a severity level IX offense, which has the effect of changing the presumptive sentences for felony murder so that they are equivalent to those for third-degree depraved mind murder. The Commission, on the other hand, slightly increased the presumptive sentences for offenders with a criminal history score of zero who committed severity level IX and X offenses. The presumptive sentence for a severity level IX offense by a person with a criminal history score of zero is now 105 (102–108) months in prison. Whether defendant should benefit from any retroactive application of the changes is not an issue on this appeal.

Suspicion focused immediately on defendant, who was among the people the victim was last seen with on the evening of September 21. Police interviewed defendant and defendant confessed, stating that he had administered the fatal blows.

At the guilty plea hearing, defendant testified that he had said he administered the fatal blows in order to protect two friends.[2] He testified that what really happened was as follows: That he had been drinking with the two friends all afternoon; that they met the victim at about 7:30 p.m. on their way to get more liquor; that the victim accompanied them to the loft of a garage across from the automobile parts business; that they drank beer, listened to the radio and talked until 9:30 p.m.; that they got in an argument with the victim and he began to leave; that as he was leaving he mouthed off to them; that they chased him; that he caught up with the victim ½ block away and knocked him down with a punch to the face; that one of his accomplices then hit the victim with the board and the other accomplice kicked him while he held him by the shirt; that they then got scared and dragged the body to the place where they disposed of it; and that he returned the next day to see if anyone had found it.

In departing, the trial court cited two aggravating factors:

> First of all, Mr. Kisch, that the victim here was a 12 year old boy. It's obvious that he was a young, susceptible boy. As an object of that he was out drinking with you and the others in the street makes no difference. He was a boy very susceptible to those who were older, and his runaway status, if anything, made him far more susceptible than if it had been a 12 year old boy just coming home from the 5th grade in school some place.
>
> The Court also finds here that certain factors in this case, although you may not be directly involved therein, were of such a heinous nature to indicate that this beating was not some wild "Sunday" punch with your fist, or an accidental striking with a board, but rather a brutal, senseless, and devastating killing, and I say senseless in words that are hard for me to describe. There's no reason in the world for this. Your degree of participation, whether it be just onlooking or an instigator or a watcher, you're just as guilty. The Court feels here that there was no sense or justification whatsoever for this senseless beating of this poor 12 year old boy.

The general issue that faces a trial court in deciding whether to depart durationally is whether the defendant's conduct was significantly more or less serious than that typically involved in the commission of the crime in question. As we stated in *State v. Back*, 341 N.W.2d 273 (Minn.1983), "If there is such a thing as a typical felony-murder, it probably is an unintentional killing that occurs in the course of robbery or some other crime against the person." 341 N.W.2d at 276–77.

As we made clear in *State v. Cox*, 343 N.W.2d 641 (Minn.1984), in a case such as this where a defendant pleads guilty to a lesser offense, the trial court ordinarily may not base an upward durational departure on evidence indicating that in fact the defendant could have been convicted of a greater offense. An exception was made and departure was allowed in *Cox* on the ground that the record established that the defendant could have been given a greater sentence than the presumptive sentence for the greater offense if he had been convicted of that offense.

Based on the general principle stated in *Cox*, it would be improper in this case to base the departure on statements in the presentence investigation report to the effect that the killing may have been intentional and even premeditated. Stated differently, we must assume that the killing was an unintentional killing in the course of an assault with a dangerous weapon and

2. Neither of these friends was ever charged, apparently because the prosecutor felt that defendant's testimony against them, the only evidence of their participation, would be easily and effectively impeached by his prior inconsistent statement indicating that he administered the fatal blows.

we must determine if it was somehow more serious than the "typical" killing in the course of a felony.

We believe that the felony murder in this case was more serious than that involved in the typical case. Defendant tries to analogize the case of a 17 year old beating a 12 year old to the case of a 37 year old beating a 32 year old, arguing that the 12 year old in this case was no more particularly vulnerable than the 32 year old in the hypothetical. We reject this reasoning. An age difference of 5 years when juveniles are involved is a significant age difference. Not only was the victim 5 years younger but he was a runaway who was dependent upon peers for help. Further, it was not just the victim against defendant but, according to defendant's own testimony, it was the victim against three older boys, one of whom was using a board. Moreover, the three did not administer just one blow but administered at least four blows to the skull with the board, causing the victim's skull to literally "explode," according to the pathologist. As the trial court put it, this was not just an unintentional killing resulting from a single blow but was one resulting from multiple brutal blows. Considering all the facts together, we conclude that the facts justified the limited durational departure.

Affirmed.