**STATE of Minnesota, Appellant,**

v.

**Bradley Kent CARTER, Respondent.**

**No. C2–88–194.**

Court of Appeals of Minnesota.

June 7, 1988.

Hubert H. Humphrey, III, Atty. Gen., James B. Early, Sp. Asst. Atty. Gen., St. Paul, Wayne H. Swanson, Polk County Atty., Crookston, for appellant.

C. Paul Jones, Public Defender, Renee Bergeron, Asst. Public Defender, St. Paul, for respondent.

Heard, considered and decided by FORSBERG, P.J., and FOLEY and NORTON, JJ.

**OPINION**

NORTON, Judge.

The state appeals the trial court's stay of the presumptive 54 month sentence, imposed after a jury found appellant guilty of second degree assault in violation of Minn. Stat. § 609.222.

## FACTS

On the evening of May 25, 1987 Dennis Schneibel was at Sharon Tinkler's house, when respondent Bradley Carter knocked on the back door and asked for Paul Larson. Tinkler told him that Larson lived downstairs in the basement, and Carter left. Schneibel and Tinkler heard a noise that sounded like something falling down the stairs.

Carter knocked on Tinkler's door again and yelled at her. Tinkler became scared and backed up. Schneibel came to the door and told Carter that he would have to wait until Larson came home. Carter then left the house.

Tinkler and Schneibel heard another loud noise outside, and saw Carter pick up a large iron rod, hit Larson's truck on the fender several times, and then ram the rod through the truck's windshield. Tinkler called the police.

Schneibel went outside and asked defendant what he was doing. Schneibel then told Carter to stay right there and that he was placing Carter under citizen's arrest.

Carter took off his jacket, said he had a black belt in karate and that he was going to hurt Schneibel. Carter grabbed a four foot long oak post and swung it around like a baseball bat. Schneibel leaned back about one foot and the wooden post just missed hitting the left side of his face.

After he missed, Carter still carrying the wooden post, took off running. Schneibel chased him, tripped him in the street, and held him until the police arrived.

Carter was charged with second degree assault in violation of Minn.Stat. § 609.222. He was found guilty of this charge by a jury.

Carter was sentenced to 54 months, the presumptive sentence under the Minnesota Sentencing Guidelines. However, the trial court departed dispositionally from the presumptive guidelines sentence. The court stayed execution of the sentence on the condition that Carter serve one year in the Northwest Regional Correctional Facility, with an authorized release, after 30 days, to in-patient treatment at a licensed chemical dependency treatment facility. The court further ordered that after Carter completes treatment, he be returned to the correctional facility and his sentence reviewed for possible work-release authorization or other appropriate changes. Carter was also ordered to abstain from the use of alcohol or drugs.

As reasons for the departure, the trial court stated that Carter has a "very severe drinking problem," but also a very poor record. Additionally, the trial court was "not all that overcome by the seriousness of, nor the nature of" the assault.

The trial court believed that the 54 month presumptive Guidelines sentence was wrong, but also indicated that the transgression was not so severe to warrant 54 months. The trial court further stated:

> Certainly except for the Sentencing Guidelines, you'd never spend 4½ years in a prison for this offense. You might get a couple of years, 2½ years or something like that, but this is the harshness of the Sentencing Guidelines.

Carter's criminal history started in 1978, shortly after he turned 18, when he committed a burglary in Hennepin County. In January 1979 he participated in Hennepin County's pretrial diversion program. However, he missed several appointments and was terminated from the program. In September 1979, he was placed on five years probation for the burglary.

On February 12, 1981, while he was still on probation, Carter was convicted in Chisago County of false imprisonment and simple robbery. He was again placed on probation for five years. While he was on probation, Carter absconded from a treatment program, stole a motorcycle, and later was convicted of unauthorized use of a motor vehicle.

On August 3, 1981, Carter was committed to the St. Cloud reformatory and remained there until he was discharged on November 21, 1982.

Shortly before respondent's probation on the robbery charge ended, he committed the offense of aiding and abetting the illegal entry of aliens. He pleaded guilty on

February 13, 1986, in federal court, and received three years probation. He was still on probation for that offense when he committed the assault in this case.

Carter also has a long history of chemical dependency. He has used drugs since he was 13 or 14 years old. He entered three treatment programs in 1978. He left the first after only 1½ weeks. He was in the second program for only 1½ days. Carter completed the third treatment program, but did not follow through either with Alcoholics Anonymous (A.A.) or other after-care.

Respondent's problems with drugs and alcohol continued through May 1981, when, as a condition of his Chisago County probation, he entered the Midwest Challenge Program, which he quit. After he was placed on probation in February 1986 for his federal conviction, his probation officer told him to get a chemical evaluation and to begin in-patient chemical dependency treatment at Anoka State Hospital. He started this treatment in November 1986 and was terminated from the program after three weeks. Subsequently, he sporadically attended A.A. meetings and appeared to maintain sobriety for several months. However, he later began using alcohol and cocaine again, and again experienced problems with chemical dependency.

## ISSUE

Did the trial court abuse its discretion by its downward dispositional departure from the sentencing guidelines?

## ANALYSIS

Key to the resolution of this appeal are the sentencing departure rules prospectively adopted by the Minnesota Supreme Court in *Williams v. State*, 361 N.W.2d 840 (Minn.1985):

1. If no reasons for departure are stated on the record at the time of sentencing, no departure will be allowed.

2. If reasons supporting the departure are stated, this court will examine the record to determine if the reasons given justify the departure.

3. If the reasons given justify the departure, the departure will be allowed.

4. If the reasons given are improper or inadequate, but there is sufficient evidence in the record to justify departure, the departure will be affirmed.

5. If the reasons given are improper or inadequate and there is insufficient evidence of record to justify the departure, the departure will be reversed.

*Id.* at 844. In this case the analysis can be simplified to a two-step process: (1) evaluating whether the reasons given by the court suffice to justify the departure, and if not, (2) examining the record to determine whether there is evidence to support the departure nevertheless.

### Sufficiency of the Court's Reasons

Minnesota Sentencing Guidelines II.D. requires trial courts to provide reasons for sentencing departures:

* * * When departing from the presumptive sentence, a judge must provide written reasons which specify the substantial and compelling nature of the circumstances, and which demonstrate why the sentence selected in the departure is more appropriate, reasonable, or equitable than the presumptive sentence.

*See also* Minn.R.Crim.P. 27.03, subd. 4(C).

Appellant argues that the trial court's stated reasons are inadequate to support the departure. In effect, appellant alleges, the trial court was merely disagreeing with the guidelines in a general sense.

■ Mere disagreement with the guidelines does not justify a departure from them. As stated in Section II.D of the guidelines, the reasons for departure must be substantial and compelling, taking into account (1) the severity of the offense, (2) the offender's prior criminal history and (3) the statement of purpose and principles in Section I of the Guidelines.

■ Appellant concedes that, taking a liberal view of the statements, the trial court may have based its decision on the grounds that Carter's crime was significantly less serious than the typical second

degree assault. However, the record does not support this reason.

The dangerous instrumentality used by Carter, a heavy wooden post, is just as deadly as a knife or a gun. For example, in *State v. Kisch*, 346 N.W.2d 130 (Minn. 1984), a 2 × 4 board 2½ feet long was used as a murder weapon. In this case the weapon was a 3 × 3 heavy wooden post four feet long. Additionally, this assault is more serious than one where the offender merely points a gun or knife at the victim, because Carter actually tried to harm Schneibel. The lack of real injury was fortuitous—either due to Carter's bad aim or the victim's agility. Further, injury is not required for a conviction of assault with a deadly weapon. Minn.Stat. § 609.02, subd. 10(1) (1986).

We find that the trial court's stated reason does not justify the dispositional departure from the presumptive sentence.

### Evidence in the Record

In looking at the Sentencing Guidelines, the trial court treated this severity level VI offense, as serious as a level I or II property crime. Carter will not go to prison under the sentence imposed, even though the trial court indicated that some prison time is appropriate.

■ In order to depart dispositionally, the offender must be amenable to probation. *See State v. Heywood*, 338 N.W.2d 243 (Minn.1983) (when justifying dispositional departure, the trial court can focus on defendant as an individual and on whether presumptive sentence is good for him and for society; trial court's reliance on defendant's amenability to probation and no prior criminal history, was proper); *State v. Wright*, 310 N.W.2d 461 (Minn. 1981) (downward dispositional departure upheld where defendant with no prior criminal history was particularly unamenable to incarceration and particularly amenable to individualized treatment in a probationary setting). Whether a person is amenable to probation depends upon:

[N]umerous factors, including the defendant's age, his prior record, his remorse, his cooperation, his attitude while in court, and the support of friends and/or family are relevant to a determination whether a defendant is particularly suitable to individualized treatment in a probationary setting.

*State v. Trog*, 323 N.W.2d 28, 31 (Minn. 1982).

Carter argues that, although the trial court did not articulate such a finding, respondent is particularly amenable to probation under all the factors listed in *Trog:* He was nearly 27 years old when he committed the assault; his four prior felonies were all committed before he was 21 and his fifth prior conviction was a gross misdemeanor; his federal probation officer stated that he was complying with the conditions of probation and his attitude was improving; he indicated remorse and a cooperative attitude at the sentencing hearing.

Carter states than an additional reason for departing dispositionally from the guidelines is his stated desire to complete a treatment program. *See State v. Nelson*, 329 N.W.2d 827, 829 (Minn.1983) ("defendant's apparent willingness to succeed in treatment is a ground for a dispositional departure in the form of a stay of execution of sentence"); *State v. Hennessy*, 328 N.W.2d 442, 443 (Minn.1983) (affirming trial court's downward dispositional departure where defendant with drinking problem "finally was motivated to try to rehabilitate himself and had found the right program to help him do it").

■ Appellant argues, and we agree, that Carter is not particularly amenable to probation. We believe that *Trog* is distinguishable from this case. *Trog* had no prior criminal record and the defendant here has five criminal history points from prior convictions; *Trog* was characterized as an "outstanding citizen" whereas Carter was not; and *Trog* had no prior attempts at chemical dependency treatment whereas Carter has been in five treatment programs

already, completed only one of them and also has had two DWI convictions. *See Trog*, 373 N.W.2d at 29–30.

We believe that the evidence does not support a downward dispositional departure. As appellant states on appeal, the trial court may have departed durationally from the 54 month presumptive sentence if proper reasons were given. The trial court may consider this option on resentencing.

## DECISION

The trial court abused its discretion by its downward dispositional departure form the Minnesota Sentencing Guidelines where the reasons given were insufficient, the record is devoid of evidence to support the departure and the defendant is particularly unamenable to probation. The trial court's stay of execution of the sentence is reversed. We remand for resentencing in accord with this opinion.

Reversed and remanded.