*This opinion will be unpublished and may not be cited except as provided by Minn. Stat. § 480A.08, subd. 3 (2012).*

**STATE OF MINNESOTA**
**IN COURT OF APPEALS**
**A14-0717**

State of Minnesota,
Respondent,

vs.

Gregory Anthony Engebretson,
Appellant.

**Filed January 5, 2015**
**Affirmed**
**Larkin, Judge**

Ramsey County District Court
File No. 62-CR-13-5470

Lori Swanson, Attorney General, St. Paul, Minnesota; and

John J. Choi, Ramsey County Attorney, Thomas R. Ragatz, Assistant County Attorney, St. Paul, Minnesota (for respondent)

Cathryn Middlebrook, Chief Appellate Public Defender, Davi E. Axelson, Assistant Public Defender, St. Paul, Minnesota (for appellant)

Considered and decided by Larkin, Presiding Judge; Cleary, Chief Judge; Hooten, Judge.

**LARKIN**, Judge

Appellant challenges his prison sentence for first-degree criminal sexual conduct, arguing that a dispositional departure was warranted. We affirm the district court's imposition of the presumptive sentence under the Minnesota Sentencing Guidelines.

## FACTS

Respondent State of Minnesota charged appellant Gregory Anthony Engebretson with two counts of first-degree criminal sexual conduct and one count of second-degree criminal sexual conduct. The state brought the charges after Engebretson's 14-year-old daughter, B.M.E., told the police that on the evening of June 30, 2013, she drank alcohol with Engebretson, passed out on the couch, and "woke up around 3:00 a.m." to find that "her shorts and underwear were off and her dad was on top of her with his penis in her vagina." B.M.E. further alleged that Engebretson had been "fondling her vagina with his fingers" and "penetrat[ing] her vagina with his fingers" since she was 11 years old.

Engebretson negotiated a plea agreement with the state under which Engebretson pleaded guilty to one count of first-degree criminal sexual conduct, and the state agreed to dismiss the other two counts. The parties agreed that the district court would determine Engebretson's sentence. During the plea colloquy, Engebretson stated that he was the one who passed out and that he woke to find that B.M.E. "had [his] shorts off and was sitting on top of [him]" with his "penis in her vagina." Engebretson stated that he continued to engage in sexual intercourse after he woke up and that he ejaculated. The

district court accepted Engebretson's guilty plea and ordered a presentence investigation and a psychosexual evaluation.

Engebretson moved for a downward dispositional departure. In a written memorandum, Engebretson argued that he "has a low risk of recidivism"; "has been particularly cooperative with law enforcement"; has "taken responsibility for his actions"; "has no criminal history"; "is seeking to provide a catharsis and resolution for his family's . . . need for healing"; and "is amenable to treatment and has been accepted for treatment into Project Pathfinder." Engebretson attached a psychological and psychosexual evaluation, which was performed by Marston Consulting Group at the request of Engebretson's attorney. The evaluator concluded that Engebretson "presents a low risk of conviction for a new sex offense within the next five, ten and fifteen years," "is an acceptable candidate for community supervision," and "appears amenable to outpatient sex offender specific treatment."

The court-ordered psychosexual evaluator concluded that Engebretson had "a low likelihood of reoffending relative to other known sex offenders." But the evaluator stated that Engebretson had a high need for services to address "his denial of his offense behavior and blaming the victim"; "his lack of openness regarding his sexual interests, attitudes, and behaviors"; "his lack of understanding of his offense dynamics and lack of re-offense prevention plan"; "his substance abuse, poor emotions management and poor problem solving skills"; and "his utter lack of empathy for anyone but himself." The court-ordered evaluator concluded that "Engebretson has the cognitive ability to complete treatment without difficulty" but that he "is not motivated for treatment and is reluctant to

3

admit to minor faults even to himself" and "is likely to have difficulty establishing a therapeutic relationship."

The probation officer who authored the presentence investigation report wrote that Engebretson "indicated it was the victim who in fact sexually assaulted him while he was passed out from drinking"; "failed to present any sense of remorse in regards to the events that occurred on the evening of the offense"; "appeared very comfortable in placing the blame on his 14 year old daughter going so far as to label her as being 'sexually deviant'"; and "not[ed] that he does not need treatment but he 'plans on completing a treatment program under the advisement of [his] attorney.'" The probation officer recommended that Engebretson serve 144 months in prison, the presumptive sentence under the Minnesota Sentencing Guidelines.

At sentencing, the district court heard oral arguments from both parties and a statement from Engebretson. The district court stated:

> I have had the benefit of hearing the remarks here today and of reviewing the presentence investigation and the two psychosexual evaluations, the letter from [B.M.E.'s mother], as well as the motion in support of the request for a departure. I take seriously the request for departure, but I cannot find the circumstances in this case which would warrant the exception requested. . . .
>
> . . . .
>
> Mr. Engebretson, you're fortunate to have supportive family who are here today to support you. It's fortunate that you are amenable to treatment. I find the Minnesota Sentencing Guidelines to guide me in reciting what the community expectation is and for what the response would be in this matter.

4

The district court sentenced Engebretson to serve 144 months in prison. This appeal follows.

**D E C I S I O N**

Engebretson challenges his sentence, arguing that "[t]he district court abused its discretion by not granting [him] a dispositional departure where [he] had no criminal history, he was a marine war veteran, and the doctor who completed his evaluation found him amenable to treatment."

The supreme court recently described the standard applicable to a district court's sentencing decision:

> [Appellate courts] afford the [district] court great discretion in the imposition of sentences and reverse sentencing decisions only for an abuse of that discretion. [But] [t]he Minnesota Sentencing Guidelines . . . limit the sentencing court's discretion by prescribing a sentence or range of sentences that is presumed to be appropriate. A sentencing court must pronounce a sentence within the applicable range unless there exist identifiable, substantial, and compelling circumstances that distinguish a case and overcome the presumption in favor of the guidelines sentence. Accordingly, a sentencing court can exercise its discretion to depart from the guidelines *only if* aggravating or mitigating circumstances are present, and those circumstances provide a substantial and compelling reason not to impose a guidelines sentence.

*State v. Soto*, 855 N.W.2d 303, 307-08 (Minn. 2014) (citations and quotations omitted). Only in a "rare" case will a reviewing court reverse a district court's imposition of the presumptive sentence. *State v. Kindem*, 313 N.W.2d 6, 7 (Minn. 1981).

Engebretson argues that he "put forth substantial and compelling reasons justifying a downward dispositional departure under *Trog*." In *State v. Trog*, the

5

Minnesota Supreme Court stated that "[n]umerous factors, including the defendant's age, his prior record, his remorse, his cooperation, his attitude while in court, and the support of friends and/or family, are relevant to a determination whether a defendant is particularly suitable to individualized treatment in a probationary setting." 323 N.W.2d 28, 31 (Minn. 1982).

Engebretson points out that he "served our country as a Marine in the Gulf War," "followed his military service by working in two different jobs as a security officer," "had no criminal history despite being 41 years old," "cooperated with law enforcement, accepted responsibility for his crime, and has shown remorse." Engebretson also draws this court's attention to the Marston Consulting Group's psychological and psychosexual evaluation, which concluded that he "presents a low risk of conviction for a new sex offense," "is an acceptable candidate for community supervision," and "appears amenable to outpatient sex offender specific treatment."

Even if the *Trog* factors were to favor Engebretson, it would not follow that the district court abused its discretion by refusing to depart from the presumptive sentence. *Trog* did not hold that a district court must depart when the factors are present; the "sole" issue was "whether the district court erred in staying execution of sentence in a case in which the Sentencing Guidelines recommend[ed] execution of sentence." *Id*. at 29. The supreme court held that the presence of all of the factors justified the departure in that case. *Id*. at 31. But the presence of a mitigating factor in a particular case does "not obligate the court to place defendant on probation." *State v. Wall*, 343 N.W.2d 22, 25 (Minn. 1984).

6

Moreover, the record does not support Engebretson's contention that substantial and compelling reasons support a downward dispositional departure. The court-ordered psychosexual evaluator reports that Engebretson was in denial regarding his behavior, blamed the victim, lacked openness regarding his sexual interests, attitudes, and behaviors, lacked understanding of his offense, had a substance abuse problem, showed poor emotion management, had poor problem-solving skills, and exhibited an utter lack of empathy for anyone but himself. The evaluator concluded that Engebretson was not motivated for treatment, was reluctant to admit to minor faults, and was "likely to have difficulty establishing a therapeutic relationship."

The presentence investigator similarly reports that Engebretson showed no remorse, blamed his 14-year-old daughter for the offense, and told the authoring probation officer that he did not need treatment. These factors do not suggest that Engebretson is particularly amenable to probation. *See Soto*, 855 N.W.2d at 309 ("By requiring a defendant to be *particularly* amenable to probation . . . [courts] ensure that the defendant's amenability to probation distinguishes the defendant from most others and truly presents the substantial and compelling circumstances that are necessary to justify a departure." (Quotation omitted.)).

When a district court imposes a presumptive sentence, this "court may not interfere with the sentencing court's exercise of discretion, as long as the record shows the sentencing court carefully evaluated all the testimony and information presented before making a determination." *State v. Pegel*, 795 N.W.2d 251, 255 (Minn. App. 2011) (quotation omitted); *see State v. Mendoza*, 638 N.W.2d 480, 483 (Minn. App. 2002) ("If

7

the district court has discretion to depart from a presumptive sentence, it must exercise that discretion by deliberately considering circumstances for and against departure."), *review denied* (Minn. Apr. 16, 2002). In this case the district court considered both parties' oral arguments and Engebretson's statement. The district court stated that it had reviewed Engebretson's motion, the presentence investigation, the two psychosexual evaluations, and the letter from the victim's mother. The district court stated that it took Engebretson's request for departure seriously, but could not conclude that the circumstances warranted a dispositional departure. In sum, the record shows that the district court carefully evaluated the information presented regarding the departure request, considered the circumstances for and against departure, and concluded that a dispositional departure was not warranted. This is not a rare case justifying reversal of a presumptive guidelines sentence.

**Affirmed.**