*This opinion will be unpublished and may not be cited except as provided by Minn. Stat. § 480A.08, subd. 3 (2014).*

**STATE OF MINNESOTA
IN COURT OF APPEALS
A14-0975**

State of Minnesota,
Respondent,

vs.

Daniel David Ojanen,
Appellant.

**Filed March 9, 2015
Affirmed
Stauber, Judge**

St. Louis County District Court
File Nos. 69DUCR124022; 69DUCR133942

Lori Swanson, Attorney General, St. Paul, Minnesota; and

Mark S. Rubin, St. Louis County Attorney, Victoria D. Wanta, Assistant St. Louis County Attorney, Duluth, Minnesota (for respondent)

Cathryn Middlebrook, Chief Appellate State Public Defender, Sharon E. Jacks, Assistant State Public Defender, St. Paul, Minnesota (for appellant)

        Considered and decided by Schellhas, Presiding Judge; Stauber, Judge; and

Hooten, Judge.

**UNPUBLISHED OPINION**

**STAUBER**, Judge

Appellant challenges his sentence, arguing that he should have been granted a dispositional departure because he is amenable to probation and because most first-time failure-to-register offenders receive dispositional departures. We affirm.

**FACTS**

Appellant Daniel David Ojanen is required to register as a predatory offender based on a 2003 conviction for third-degree assault and fourth-degree criminal sexual conduct. In October 2013, Ojanen's yearly address verification letter was returned to the Minnesota Bureau of Criminal Apprehension as undeliverable. The Duluth police discovered Ojanen no longer resided at his stated address and they could not determine his whereabouts. Ojanen was charged with violating the predatory-offender registration requirements. *See* Minn. Stat. § 243.166, subd. 5(a) (2012) (stating that a person who knowingly violates any of the predatory offender registration requirements is guilty of a felony).

Approximately eight months later, Ojanen was found, appeared in court, and was released pending trial. On September 25, 2013, during Ojanen's pretrial release period, he was charged with fifth-degree possession of a controlled substance, a felony, *see* Minn. Stat. § 152.025, subd. 2(a)(1) (2012); third-degree criminal damage to property, a gross misdemeanor, *see* Minn. Stat. § 609.595, subd. 2(a) (2012); and three counts of tampering with a motor vehicle, all misdemeanors, *see* Minn. Stat. § 609.546 subd. 2 (2012). Ojanen later pleaded guilty to the failure-to-register charge and all the September

25, 2013 charges. In exchange, the state agreed to dismiss an unrelated fourth-degree assault charge. *Id.* The district court ordered a presentence investigation on the two remaining felony charges.

Ojanen moved for a downward dispositional departure, requesting "long term probation, with conditions to include local incarceration, [and] participation in any programming and aftercare recommended." Ojanen cited his mental illness and chemical-dependency issues and the frequency of failure-to-register offenders being granted dispositional departures as reasons to depart. The district court found that there were no sufficient substantial and compelling reasons to depart from the sentencing guidelines and imposed the presumptive executed sentence under the Minnesota Sentencing Guidelines: imprisonment for 36 months on the failure-to-register charge and 21 months on the fifth-degree possession charge, to run concurrently. This appeal followed.

## D E C I S I O N

Ojanen first argues that the district court abused its discretion when it denied his motion for a dispositional departure. We review a district court's sentencing decision for an abuse of discretion. *State v. Soto*, 855 N.W.2d 303, 307-08 (Minn. 2014). However, the Minnesota Sentencing Guidelines set forth presumptively appropriate sentence ranges and require a sentence "within the applicable range unless there exist identifiable, substantial and compelling circumstances" to depart. *Id.* at 308 (quotation omitted). "This court will not generally review a district court's exercise of its discretion to sentence a defendant when the sentence imposed is within the presumptive guidelines

3

range." *State v. Delk*, 781 N.W.2d 426, 428 (Minn. App. 2010), *review denied* (Minn. July 20, 2010). Instead, only the "rare" case requires us to reverse the district court's imposition of a presumptive sentence. *State v. Kindem*, 313 N.W.2d 6, 7 (Minn. 1981).

To determine whether a downward dispositional departure is justified, the court considers the non-exclusive *Trog* factors which include "the defendant's age, his prior record, his remorse, his cooperation, his attitude while in court, and the support of friends and/or family." *State v. Trog*, 323 N.W.2d 28, 31 (Minn. 1982). The presence of mitigating factors does not require the court to grant a dispositional departure. *State v. Abrahamson*, 758 N.W.2d 332, 337 (Minn. App. 2008), *review denied* (Minn. Mar. 31, 2009). Rather, the court focuses "on the defendant as an individual and on whether the presumptive sentence would be best for him and for society." *State v. Heywood*, 338 N.W.2d 243, 244 (Minn. 1983). A stay of execution, as Ojanen requested, is justified by a "defendant's particular amenability to individualized treatment in a probationary setting." *Trog*, 323 N.W.2d at 31.

Ojanen argues that he was particularly amenable to probation and that the *Trog* factors support a dispositional departure. He first asserts that he showed remorse when he apologized to the victims of the vehicle damage, the court, and the legal system in general. He next argues that he took responsibility for the offense, demonstrated by his guilty plea. But Ojanen pleaded guilty only after jury selection began, undermining this argument. In fact, the state alleges that Ojanen was playing games with the system and that this was Ojanen's "third time in court to start a trial for one of his open files."

Ojanen claims that he was cooperative throughout the process. His presentence investigation notes Ojanen as "cooperative and respectful." But after his pretrial release for the failure-to-register offense, Ojanen was charged with several new offenses. Further, while in jail after being arrested on the new charges, Ojanen was tased when he became uncooperative with jail staff who were transporting him to his arraignment. Ojanen explained that this incident occurred because he was still under the influence of drugs. Ojanen also cites the support of his family because he wishes to set a good example for his daughter, for whom his parents currently provide care. He further argues that since he would be supervised longer if he were granted a dispositional departure, probation would be better for him and the community.

Ojanen does not dispute that he has a significant criminal history, notably 11 felonies for a variety of offenses including first-degree criminal damage to property, third-degree assault, fourth-degree criminal sexual conduct, theft, and controlled-substance crimes. But he claims he is finally ready to face his mental-health and chemical-dependency issues. He asserts that criminal history is not dispositive on whether a dispositional departure should be granted. *See State v. Malinksi*, 353 N.W.2d 207, 209-10 (Minn. App. 1984) (affirming a dispositional departure where the court identified sufficient factors showing the defendant was amenable to probation despite defendant's lengthy criminal history), *review denied* (Minn. Oct. 16, 1984). But caselaw demonstrates only that with sufficient findings the district court *could* have granted Ojanen a dispositional departure, not that the district court abused its discretion by imposing an executed prison sentence. And, unlike the defendant in *Malinski*, Ojanen's

5

criminal history includes violent crime. Furthermore, the district court was concerned that Ojanen's suggested treatment center would not accept him due to Ojanen's behavioral issues while in jail.

At sentencing, the district court considered that Ojanen appeared to "sincerely want to make a change in [his] behavior and [his] life." But the district court found that when balancing this with Ojanen's criminal history and his previous lack of compliance with probation, there were not substantial and compelling circumstances to depart. Ojanen's arguments, including those on the *Trog* factors, do not require the district court to grant the departure—especially since other factors support the imposition of the presumptive sentence. *See Abrahamson*, 758 N.W.2d at 337. Here, the district court properly considered Ojanen's arguments. *See State v. Curtiss*, 353 N.W.2d 262, 264 (Minn. App. 1984) (stating that a district court must deliberately consider a defendant's arguments for departure). Ojanen has failed to show that the district court abused its broad discretion by imposing the presumptive sentence. We conclude that this is not the "rare case" that warrants reversal of the imposition of a guidelines sentence. *See Kindem*, 313 N.W.2d at 7.

Ojanen also claims that his sentence was unjustifiably disparate as compared to other first-time failure-to-register offenders because, in 2012, half of defendants convicted of failure-to-register offenses were given dispositional departures. Despite these statistics, the guidelines state that "[t]he sentence ranges provided in the [s]entencing [g]uidelines [g]rid are presumed to be appropriate for the crimes to which they apply," and that district court "shall pronounce a sentence within the applicable

6

range unless there exist identifiable, substantial, and compelling circumstances to support a sentence outside the range." Minn. Sent. Guidelines 1, 2.D (Supp. 2011).

As discussed above, Ojanen's circumstances do not demonstrate that the district court abused its discretion by sentencing him to prison. Dispositional departures are based upon offender-related factors, making other similarly situated offenders' sentences irrelevant. *See Trog*, 323 N.W.2d at 31 (listing offender-related factors); *see also State v. Behl*, 573 N.W.2d 711, 713 (Minn. App. 1998), *review denied* (Minn. Mar. 19, 1998) (stating that offender-related factors, and not offense-related factors, justify a dispositional departure). Here, the district court properly considered Ojanen's offender-related factors—including his criminal history and failed parole and probation attempts—and we affirm its imposition of the presumptive sentence.

**Affirmed.**