*This opinion will be unpublished and
may not be cited except as provided by
Minn. Stat. § 480A.08, subd. 3 (2014).*

**STATE OF MINNESOTA
IN COURT OF APPEALS
A14-1851**

State of Minnesota,
Respondent,

vs.

Charles Arthur Bell,
Appellant.

**Filed November 23, 2015
Affirmed
Kirk, Judge**

Washington County District Court
File No. 82-CR-13-198

Lori Swanson, Attorney General, St. Paul, Minnesota; and

Peter J. Orput, Washington County Attorney, Peter S. Johnson, Assistant County Attorney, Stillwater, Minnesota (for respondent)

Mark F. Novak, Novak Law Office, Fridley, Minnesota (for appellant)

Considered and decided by Kirk, Presiding Judge; Johnson, Judge; and Bjorkman, Judge.

## UNPUBLISHED OPINION

**KIRK**, Judge

On appeal from his conviction of first-degree criminal sexual conduct, appellant argues that (1) the evidence is insufficient to sustain his conviction; and (2) the district

court abused its discretion by denying his motion for a downward dispositional departure and imposing the presumptive sentence. We affirm.

## FACTS

In September 2012, 20-year-old A.A.K. informed her mother that her step-grandfather, appellant Charles Arthur Bell, sexually molested her approximately 11 to 14 years ago. The next day, A.A.K. reported the incident to the police. In January 2013, appellant was charged with first-degree criminal sexual conduct. The district court held a jury trial in May 2014.

During the trial, A.A.K. testified that the incident occurred when she was visiting her grandmother and appellant at their house in Afton. A.A.K. and her brother were playing video games while appellant was sitting at an office desk near them. Appellant asked A.A.K. to come over and sit on his lap. When she did, he pushed her under the desk and proceeded to put his hand underneath her pajamas. He touched her breast and shoved his fingers in her vagina. He then exposed his penis and rubbed her hand on it until he ejaculated.

A.A.K. also testified that, after she reported the incident to the police, she confronted appellant about the incident in a text message. In response, appellant texted "I am truly sorry for many of my past transgressions. My younger years were filled with things I can't take back and should not have happened[,] and will affect many lives for years to come. I can only hope that the good I've done will somehow outweigh the bad."

A sheriff's deputy, a detective, and A.A.K.'s mother testified to what A.A.K. had reported to them. Appellant also testified. Appellant denied that he had sexually

2

molested A.A.K. and claimed that it would have been physically impossible for the incident to occur as A.A.K. described due to his obesity. Further, he claimed that the part of the house that A.A.K. described the incident occurring in was under construction during the time period of the alleged offense.

The jury found appellant guilty of first-degree criminal sexual conduct. Following a sentencing hearing, the district court sentenced appellant to a presumptive executed sentence of 81 months in prison.

## DECISION

**I.    The evidence in the record is sufficient for the jury to have reasonably concluded that appellant committed first-degree criminal sexual conduct.**

When presented with a claim of insufficient evidence, this court's review is limited to a careful analysis of the record to determine whether the evidence presented at trial, viewed in a light most favorable to the conviction, is sufficient to allow the jury to reach the verdict that it did. *State v. Ortega*, 813 N.W.2d 86, 100 (Minn. 2012). This court will not disturb the verdict if the jury, "acting with due regard for the presumption of innocence and for the necessity of overcoming it by proof beyond a reasonable doubt, could reasonably conclude that [the appellant] was proven guilty of the offense charged." *Bernhardt v. State*, 684 N.W.2d 465, 476-77 (Minn. 2004).

To convict appellant of first-degree criminal sexual conduct, the state had to prove beyond a reasonable doubt that he sexually penetrated A.A.K. when A.A.K. was younger than 13 years old and appellant was more than 36 months older. *See* Minn. Stat. § 609.342, subd. 1(a) (2002). Appellant admits that A.A.K.'s testimony satisfied the

3

elements of the charged offense. However, he contends that A.A.K.'s claims were uncorroborated and unreliable.

"[A] conviction can rest on the uncorroborated testimony of a single credible witness." *State v. Foreman*, 680 N.W.2d 536, 539 (Minn. 2004) (quotation omitted); *see also* Minn. Stat. § 609.347, subd. 1 (2014). The determination of whether a witness is reliable is a matter for the factfinder. *See State v. White*, 357 N.W.2d 388, 390 (Minn. App. 1984) ("[T]he factfinder must choose between conflicting factual accounts and determine the credibility, reliability, and weight given to witnesses' testimony."). Accordingly, we defer to the jury's credibility determinations, *State v. Watkins*, 650 N.W.2d 738, 741 (Minn. App. 2002), and assume that "the jury believed the state's witnesses and disbelieved any evidence to the contrary." *State v. Moore*, 438 N.W.2d 101, 108 (Minn. 1989).

Appellant acknowledges that a conviction can rest on the testimony of a single credible witness and the deference owed to the jury's credibility determinations, but he argues that the Minnesota Supreme Court has reversed convictions where a witness's testimony was of dubious credibility and unsupported by other evidence. In support of his argument, appellant cites to three supreme court cases in which convictions were reversed "because each involved additional reasons to question the victim's credibility." *Foreman*, 680 N.W.2d at 539. We conclude that all three cases are distinguishable from this case.

The first case, *State v. Huss*, involved the testimony of a three-year-old alleged sexual-abuse victim who provided the state's only direct evidence. 506 N.W.2d 290, 292

4

(Minn. 1993). The supreme court summarized the child's testimony as "contradictory as to whether any abuse occurred at all, and . . . inconsistent with her prior statements and other verifiable facts." *Id.* The court also stated that the "repetitious use" of a therapy book and its audio tape "may have caused the child to imagine the abuse," a theory supported by a licensed psychologist who testified as a defense expert at the trial. *Id.* at 293. The court concluded that, "on these unusual facts, . . . the state did not meet its burden of proof beyond a reasonable doubt and that the conviction should be reversed." *Id.*

In the second case, *State v. Langteau*, only the defendant and the alleged victim "gave significant evidence at the trial." 268 N.W.2d 76, 77 (Minn. 1978). The supreme court noted that the victim's actions were "unexplained," the reasons why the defendant would have committed the crime were "left a mystery," and that "nothing was discovered to link [the defendant] with the crime." *Id.* The court held that under these circumstances, the interests of justice required a new trial. *Id.*

Lastly, *State v. Gluff* involved the trustworthiness of a witness's lineup identification of the defendant. 285 Minn. 148, 151, 172 N.W.2d 63, 65 (1969). The supreme court noted that the witness saw the perpetrator for only 30 seconds before "he leveled a revolver at her" and that her description to police was "wholly at variance" with her later identification of the defendant. *Id.* The court stated that the witness's testimony about her identification "clearly lacked probative value" because of flaws with the lineup procedure. *Id.* And it concluded that because the identification was not corroborated and the victim had a "limited opportunity to observe the robber," the trustworthiness of the

5

witness's identification of defendant was "permeated with doubt." *Id.* The court held that a new trial in the interest of justice was required. *Id.* at 153, 172 N.W.2d at 66.

Here, A.A.K., the victim-witness, who was 22 years old at the time of the trial, consistently testified during direct and cross-examination that appellant put his hand underneath her pajamas, touched her vagina, and shoved his fingers inside of her. She did not have to identify appellant from a lineup because appellant is her step-grandfather and they had spent hours together before the incident. The testimony of law-enforcement officers regarding what A.A.K. had reported to them was generally consistent with A.A.K.'s trial testimony. Moreover, when confronted by A.A.K. in a text message, appellant apologized for his "past transgressions."

Nonetheless, appellant argues A.A.K.'s accusations against him changed in significant ways each time that she was asked to tell her version of events. For example, he argues in A.A.K.'s statement to the police, she claimed that during the incident she was startled by a noise. However, A.A.K. never told the police that her brother came up to appellant looking for her, as she testified to at trial. He also argues that in another statement to the police, A.A.K. claimed that she told appellant during the incident that she wanted to go downstairs. However, A.A.K. later contradicted herself when she stated that she asked to go to the bathroom during the alleged incident, not to go downstairs.

But appellant's attorney cross-examined the state's witnesses about all these apparent inconsistencies and highlighted these issues in his closing argument. Further, when confronted with these issues on cross-examination, A.A.K. was able to provide reasonable explanations. A.A.K. testified that the noise that she referred to in her

6

statement to police was her brother getting up and approaching appellant. A.A.K. also testified that the bathroom was downstairs. The jury's verdict reflects its rejection of appellant's arguments in favor of the state's witnesses and evidence. Because the jury, acting with due regard for the presumption of innocence and for the necessity of overcoming it by proof beyond a reasonable doubt, could reasonably conclude that appellant was guilty of first-degree criminal sexual assault, the verdict should not be disturbed.

**II. The district court did not abuse its discretion in imposing the presumptive sentence.**

The district court executes the presumptive sentence provided in the sentencing guidelines unless the case involves "substantial and compelling circumstances" to warrant a departure. *State v. Kindem*, 313 N.W.2d 6, 7 (Minn. 1981); Minn. Sent. Guidelines 2.D.1 (2012). Appellate courts "afford the [district] court great discretion in the imposition of sentences and reverse sentencing decisions only for an abuse of that discretion." *State v. Soto*, 855 N.W.2d 303, 307-08 (Minn. 2014) (quotation omitted). "[A]s long as the record shows the sentencing court carefully evaluated all the testimony and information presented before making a determination," this court will not interfere with the district court's exercise of discretion. *State v. Pegel*, 795 N.W.2d 251, 255 (Minn. App. 2011) (quotation omitted).

Substantial and compelling circumstances are those that make a case atypical. *Taylor v. State*, 670 N.W.2d 584, 587 (Minn. 2003). A defendant's "*particular amenability* to individualized treatment in a probationary setting" will support a dispositional departure. *Soto*, 855 N.W.2d at 308 (quoting *State v. Trog*, 323 N.W.2d 28,

7

31 (Minn. 1982)). *Trog* outlines the factors that *may* justify a dispositional departure, and states that "the defendant's age, his prior record, his remorse, his cooperation, his attitude while in court, and the support of friends and/or family, are relevant to a determination whether a defendant is particularly suitable to individualized treatment in a probationary setting." 323 N.W.2d at 31. But the presence of one or more of the factors identified in *Trog* does not require that a district court depart from the guidelines. *State v. Wall*, 343 N.W.2d 22, 25 (Minn. 1984); *see also State v. Bertsch*, 707 N.W.2d 660, 668 (Minn. 2006) (stating that "we will not ordinarily interfere with a sentence falling within the presumptive sentence range, either dispositionally or durationally, even if there are grounds that would justify departure" (quotation omitted) (alteration in original)).

Appellant argues that the district court abused its discretion by disregarding the substantial and compelling reasons for a downward dispositional departure, including evidence regarding his age, lack of a criminal history, feelings of remorse, cooperation, attitude while in court, and the support that he receives from family and friends. However, the record reflects that after reviewing the pre-sentence investigation report, sentencing worksheet, A.A.K.'s victim statement, and the arguments from both appellant's counsel and the prosecutor, the district court considered and ultimately rejected appellant's arguments. Because the district court carefully evaluated all of the testimony and information presented before making its determination, we conclude the court did not abuse its discretion by denying appellant's motion for a downward dispositional departure.

**Affirmed.**

8